MARY J. FERRIS, Respondent, *v.* CHARLIE THAW ET AL., Appellants.

5    279
e99   ¹608

February 12, 1878.

1. Where certain persons, organized as a club, expressly authorize their presiding officer to execute a note in the name of the club, the note, when made, to be used in making purchases for the use of the club, and the note is executed and the purchases made in accordance with such direction and authorization, those persons who thus authorized the use of the club name became partners as to this particular transaction, and are each individually liable on the note to the person who advanced money thereon, under the common name assumed by them. Each was a principal in the transaction, and is regarded as having adopted the club name as his own, and as having signed the note, through an agent, in that name. And

where, on maturity of this note, it is renewed by another, executed in the same manner and by authority of the same men, this note is not the note of the agent, but of those expressly authorizing such use of the club name.

2. Where it appears from the attendant circumstances that it was not the intention to bind the agent, and that the credit was not given to him, a note signed by the agent authorized to execute the note for the company, with the name of the company following that of the agent, will be the note of the company, and not the sole obligation of the agent.

Appeal from St. Louis Circuit Court.

*Affirmed.*

D. W. Sadler, for appellants: The note offered in evidence as the note sued on was not such a note as described in the petition. It was the individual note of Charlie Thaw, and the court should not have allowed it to be read in this action. — Story on Prom. Notes, sec. 65, and note; *Pentz* v. *Stanton*, 10 Wend. 271; *Stackpole* v. *Arnold*, 11 Mass. 27   The court below erred in permitting the minutes of the lodge, of Sept. 24, 1869, to be read to the jury for any purpose whatever, more especially as it did not tend to prove any allegation of the petition. — *Williams* v. *Carpenter*, 28 Mo. 453; *Childress* v. *Cutter*, 16 Mo. 24; *Morrissey* v. *Wiggins Ferry Co.*, 47 Mo. 521. The court below should not have allowed the note dated Sept. 30, 1869, to be read to the jury. It had been surrendered, and the note sued on accepted in its stead. The note of Sept. 30, 1869, was a very different instrument from the one described in the petition, and the introduction of it calculated to mislead the jury. — *Green* v. *Gallagher*, 35 Mo. 226; *Eddy* v. *Baldwin*, 32 Mo. 369. Where there is no evidence upon which to found an instruction, it should not be given. — *Fike* v. *Clark*, 55 Mo. 105. An instruction which is inconsistent with plaintiff's petition, and not applicable to the issues in the case, or which is inconsistent with other proper instructions given, should be refused. — *Quinlivan* v. *English*, 44 Mo. 46; *Budd* v. *Hoffheimer*, 52 Mo. 297; *Henschen* v. *O'Bannon*, 56 Mo. 289; *Thomas* v. *Babb*, 45 Mo. 384;

*s. c.,* 50 Mo. 472. There was no evidence of a renewal of the note of Sept. 30, 1869. — *Budd* v. *Hoffheimer,* 52 Mo. 297. Voluntary associations for social or charitable purposes, and the like, are not properly partnerships, nor have their members the powers or responsibilities of partners; nor can the majority bind the minority, except by special agreement. — Pars. on Part. 42, note *c; Fleming* v. *Hector,* 2 Mee. & W. 172; *Fay* v. *Noble,* 7 Cush. 188 · *Woodward* v. *Cowan,* 41 Me. 1; *Post* v. *Kimberly,* 9 Johns. 470; *Livingston* v. *Lynch,* 4 Johns. Ch. 592; Coll. on Part., sec. 198, and note; Story on Part., sec. 125. Members of voluntary associations are to be treated as individuals, holding jointly the property of the association. And if obligations are entered into, or debts contracted, they are not entered into as partners, but as individuals. — *Fells* v. *Read,* 3 Ves. 70; *Lloyd* v. *Loaring,* 6 Ves. 773. If there was no corporation, all its pretended acts as such were void; it could create no agents, nor could it confer any authority on any one to act in its behalf; all those who pretended to act for it were acting without authority; if it had no power to issue the note sued on, then those who acted as such agents are liable, and no others. — *Hunt* v. *Salisbury,* 55 Mo. 310; *Fay* v. *Noble,* 7 Cush. 188; *Hampton* v. *Speckenagle,* 9 Serg. & R. 212; *Medill* v. *Collier,* 16 Ohio St. 599; Story on Ag., sec. 264 *a,* and note. Where no legal cause of action is set out in the petition, the judgment will be arrested. — *Langford* v. *Sanger,* 40 Mo. 160; 47 Mo. 457, *House* v. *Powell,* 45 Mo. 381; 28 Mo. 335.

E. B. SHERZER, for appellant Ryder: The members of voluntary associations are not partners. — *Bright* v. *Hutton,* 12 Eng. Law & Eq. 1; *White* v. *Brunell,* 3 Abb. Pr. 318; *Cox* v. *Bodfish,* 35 Mo. 302; *Fay* v. *Noble,* 7 Cush. 188. If the principal does not exist, or if unauthorized by him, the act is that of the agent, and he is individually liable. — *Hunt* v. *Salisbury,* 55 Mo. 310; *Lapsley* v. *McKinstry,*

.38 Mo. 245 ; *Byars* v. *Doore's Administrator*, 20 Mo. 284 ; *Allen* v. *Pegram*, 16 Iowa, 163. It is error to admit testimony which has no relation to the issues. — *Eddy* v. *Baldwin*, 32 Mo. 369 ; *Blair* v. *Corby*, 29 Mo. 480. Thaw, in signing the note, did not act or purport to act as agent for Ryder, and Ryder's assent to the action of Thaw does not constitute Thaw his agent, or amount to a ratification. — *Pittsburg, etc., R. Co.* v. *Gazzam*, 32 Pa. 340 ; *Sanderson* v. *Griffiths*, 5 Barn. & Cress. 909 ; *Vere* v. *Ashby*, 10 Barn. & Cress. 288 ; *Ferry* v. *Taylor*, 33 Mo. 323. His name not appearing on the note, Ryder could not be sued thereon. — *Kelner* v. *Baxter*, 2 C. P. 174 ; *Rogers* v. *Carver*, 21 Mo. 517.

NOBLE & ORRICK, for respondent : " Polar Star Lodge, No. 79," is not a corporation, and cannot be sued as such. — *Hunt* v. *Salisbury*, 55 Mo. 310. It was an ostensible corporation, without legal existence, and its members must be treated as partners. — *Wells* v. *Gates*, 18 Barb. 554 ; *Hill* v. *Beach*, 1 Beas. 31 ; Pars. on Part. 6 ; Gow on Part. 5 ; 2 Rawle, 263. Those members who either authorized the execution of the note, or ratified it after execution, are bound by it. — *Williams* v. *Bank*, 7 Wend. 542 ; *Babb* v. *Reed*, 5 Rawle, 151 ; *Cross* v. *Jackson*, 5 Hill, 480 ; 4 Serg. & R. 356. Where the officer or agent of a voluntary association signs a note with his own name, followed by the style of his office and the name of the association for which he acts, such note is not necessarily his sole obligation. — *McLellen* v. *Reynolds*, 49 Mo. 312 ; *Smith* v. *Alexander*, 31 Mo. 193 ; *Shuetze* v. *Bailey*, 40 Mo. 69 ; *Munn* v. *Johnson*, 42 Mo. 74.

BAKEWELL, J., delivered the opinion of the court.

This action is upon a negotiable promissory note for :$4,000, dated Oct. 3, 1870, at twelve months, executed by " Charlie Thaw, W. M. Polar Star Lodge, No. 79," to the

order of " John W. Luke, Treasurer," and by him indorsed. There was a verdict and judgment for plaintiff; and defendants appeal.

On the trial, evidence was introduced tending to show that on Sept. 30, 1869, Polar Star Lodge, No. 79, of Ancient Free and Accepted Masons, was a voluntary association of persons, organized according to masonic rules, and meeting in St. Louis. Appellants and others were members of the association. In September, 1869, the lodge desired to assist the Masonic Hall Association, a corporation owning the masonic building in St. Louis in which Polar Star Lodge met. The Masonic Hall Association was embarrassed, and the lodge agreed to purchase $5,400 of its second-mortgage bonds. In order to make the purchase, it became necessary to borrow $4,000; and that this might be done, a note was made by defendant Thaw, worshipful master of the lodge, to the order of defendant Luke, who was then its treasurer. This note was indorsed by Luke, by all the defendants except Defriez, and by eight other members of the lodge; and on the security of this note, plaintiff advanced $4,000. All of the appellants were present at a lodge meeting held six days before the date of this note, at which meeting the matter was discussed, and the fact stated, and entered in writing on the proceedings of the lodge, that the note had been executed and indorsed, and by whom, and that the moneys received had been paid over to the Masonic Hall Association, which had transferred, as security, $5,800 second-mortgage bonds. This action was ratified by a vote of the lodge at which all the appellants were present. The coupons of the mortgage bonds were used by the lodge for paying rent to the Masonic Hall Association for the room in which the lodge met, and the semi-annual interest on the note was paid by the lodge. Before the maturity of the note, the lodge caused articles of incorporation to be filed in the Circuit Court, and obtained a certificate of incorporation; but no copy of the articles

was ever filed with the secretary of state; the incorporation, therefore, was never consummated. When the original note matured, in September, 1870, the lodge could not conveniently pay it; and, at a meeting of the lodge, Luke and Thaw were appointed a committee to hypothecate the bonds or renew the lodge note, as they saw proper. The committee determined to renew the note; and, in renewal, executed the note in suit, on which, up to Jan. 17, 1876, the semi-annual interest seems to have been paid. The old note was taken up by the new note, now in suit; and, together with the new note, there were deposited with the banker of plaintiff the Masonic Hall Association bonds for the face value of $5,800, then worth eighty-five cents on the dollar. A witness says that these bonds were deposited as collaterals. No writing to that effect was given; and it seems that the Polar Star Lodge had free access to these bonds, and regularly used the coupons. What the bonds were worth at the date of the suit, or what has become of them, does not appear. The action of the committee in renewing the note was ratified at a meeting of the lodge, at which Thaw says that himself, Luke, Ryder, Defriez, Rogers, — that is, all the appellants, — and others, were present.

The petition of plaintiff alleges the steps taken toward the incorporation of the lodge by the appellants and others of whom it was composed, and the failure of these measures, and that no corporation was created; but that the articles of incorporation provided that the worshipful master and the treasurer should be officers of the lodge, and that Thaw and Luke were such officers, and acted as such with the consent of the other defendants when the note was executed; that defendants, acting and representing and holding themselves out to plaintiff as a corporation, did, on Oct. 3, 1870, borrow of plaintiff $4,000, for the purposes of their organization as declared in their articles of association, for which they issued, under the hand of Thaw, the master aforesaid, and the seal of the association, the note in suit, which is

described; that defendants did cause said Luke, treasurer as aforesaid, to indorse and deliver the same to plaintiff as the note and obligation of the association; and that the note was made and delivered to plaintiff by defendants, and each of them, in the exercise of such powers as the articles of association purported to give to them as a corporation. The answer of Luke and Defriez and Thaw is a general denial, and alleges that the lodge was incorporated on June 11, 1870. The answer of Rogers and Ryder admits that they were members of the lodge, but denies all other allegations of the petition.

The note in suit, filed as an exhibit and offered in evidence, does not show any seal. The seal of the lodge appears to have been impressed only on the original note, which it was given to renew. On the part of the plaintiff, the jury were instructed that if they believed from the evidence that defendants, composing Polar Star Lodge of Masons, No. 79, representing themselves as a corporation, had not filed their articles of incorporation with the secretary of state, they were not a corporation; and if defendants were members, Thaw, master, and Luke, treasurer, of the lodge at the date of the note in suit, and defendants, or any of them, authorized Thaw and Luke to execute and indorse the note in suit as the note of the lodge, or received the benefits of the note, or assented to, ratified, or approved the execution of the note as the note of the lodge, the jury should find for plaintiff against such defendants. Also, that if defendants, or any of them, were on Sept. 27, 1869, and up to Oct. 3, 1870, members of Polar Star Lodge, Ancient Free and Accepted Masons, No. 79; that on Sept. 24, 1869, Thaw was worshipful master of the lodge, and, as such, borrowed of plaintiff $4,000, which the lodge received of Thaw; and that Thaw, as worshipful master, executed the note of the lodge for that amount, and delivered it to plaintiff; and that defendants, or any of them, at a meeting of the lodge, voted to approve the action of Thaw

in executing the note or obtaining said loan, then the jury will find that the defendants so approving and voting are liable in this action to the plaintiff for the amount due upon said note, or any renewal thereof.

At the instance of the defendant the court instructed: *First,* That the minutes of the lodge are not conclusive evidence of authority to execute the note sued on, against any defendants not shown to have been present voting affirmatively; *Second,* That the majority of members present at a lodge meeting could not bind the minority to any personal obligation on the note in suit, and that the jury must find for any of the defendants whom they find to have been not present at the meetings of which the records were read, and not to have agreed to or ratified the act of Thaw in executing the note, so as to make the act of Thaw their act; *Third,* That if, at any lodge meeting, Thaw was authorized by a majority vote to execute the note sued on, nevertheless he did not act as the agent of any defendant not present at such meeting, and his act would not bind such defendant, unless Thaw, in making the note, expressly acted as his agent, and plaintiff so understood it, and such defendant assented to and ratified the act; *Fourth,* That if Defriez was not present at any meetings of the lodge when the matter of the indebtedness to Mrs. Ferris was ratified or authorized by a majority of the lodge, and did not authorize Thaw to bind him in any other way as his agent in the transaction, nor in any manner, or at any time, assent to or ratify the action of Thaw in making the note sued on, they will find for the defendant Defriez.

1. Certain societies, as clubs, which are not constituted for any purpose of profit, are exposed to liabilities similar in many respects to those of a partnership. Coll. on Part. 25. All parties who take an active part in working out a project, who attend meetings at which resolutions are made, or orders given for the supply of goods, in furtherance of a joint undertaking, are, in general, jointly responsible. The

act of a secretary of a voluntary association will not bind the board, if not authorized; but it will bind any members who were present at a meeting, and concurred in giving authority to the secretary. Where members of a voluntary association authorize its officers to engage in a particular transaction in the name of the society, as they do not bind the society as a body, or give to persons interested a tangible third party against whom they can proceed, they are themselves the only persons that can be sued, and are, in fact, principals in the transaction. 1 Add. on Con. 215, 222, and cases.

If the appellants, members of an organized club or association of gentlemen, expressly authorized the presiding officer of the association to execute a note in the name of the club, or in any other name whatever, expressive of an association of men, and to use this note, when made, for the purpose of purchasing bonds to be owned by and used for the club of which they were members, and these bonds were purchased and the note executed in the name of the club, whatever may be said as to the liability of the other members of the association, we cannot see on what principle it can be denied that those expressly sanctioning or ratifying this use of the club's name are liable upon the note to the person who advanced the money. It is not necessary to invoke the doctrine of partnership, perhaps; yet as to this particular transaction these men became partners, though not partners in trade, and however distinct as to other matters. And if they choose to assume a common name, under that name they will, each and every one, be liable as if the name signed to the note was the individual name of each man; and if they employ an agent's hand to write that name, it is as if each man had himself held the pen.

If, on the maturity of this note, it was, by express authorization or sanction of these several men, renewed by another note, executed in the name of the club by its presiding officer, this note also would be the note, not of the

agent, but of all those who had sanctioned this use of the club name, and for the purposes of this transaction adopted it as their own. The mere name is nothing; its only office is that of identification. If Smith choose to call himself Snooks, and to make a contract by the name of Snooks, he binds himself as effectually as if he had signed the name of Smith. *Snook's Petition*, 2 Hilt. 575. If the appellants authorized Thaw to execute a promissory note, to be used to purchase property for their purposes, and told him to execute it in the name of the lodge, it is manifest that they intended to enter into a contract by that name. They did not mean that Thaw alone should be bound, for Thaw could bind himself without any authority from them, and in his own proper name; they could not by their act bind the lodge, for it was not a corporate body; nor could they bind the individual members of the lodge, for whom they were not authorized to act. They were themselves the principals in the transaction if they directed or sanctioned the making and renewal of the note; and if the money was obtained on this note, and received by the lodge of which they were members, they are personally liable on the just principles of the common law.

There is evidence to show this state of facts, and some evidence to connect every one of the appellants with the making of the original note, and its renewal by the one in suit, either by direction, assent, or ratification. In fact, Defriez is the only one of the appellants whose name does not appear either as maker or indorser of the first note; and the testimony of Thaw is express that Defriez and each of the other appellants were present at the meeting, and ratified the acts of the committee that gave the renewal note in the name of the lodge.

2. It is said that the note does not purport to be the note of the lodge, but is signed by the agent, with name of the lodge added as part of the *descriptio personœ*. The signature is " Charlie Thaw, W. M., Polar Star Lodge, No. 79,

John W. Luke, Treasurer." This execution of the note, under the decisions of our own State, is sufficient to bind those for whom the evidence showed Thaw to be acting as agent, and who could be bound by the use of the name "Polar Star Lodge, No. 79." The technical rule, that if an agent or officer of a company or corporation puts his name officially, and not the name of his principal, to a simple contract, it becomes his sole obligation, does not apply unless it appears from the attendant circumstances that the intention was to bind the agent, and that the credit was given to him. 42 Mo. 74; 49 Mo. 312; Story on Ag., sec. 160. There is no connecting particle between the name of Thaw, in the signature to this note, and the name of his principal, the Polar Star Lodge, so that, by strict construction, it might seem to be the note of Thaw and the lodge; we think, however, that by fair intendment it is the note of the Polar Star Lodge, by Thaw, its agent. *Smith* v. *Alexander*, 31 Mo. 194.

3. It is not necessary to set out the instructions refused. They were inconsistent with those given; and from what has been said, it appears that we consider that the case was submitted to the jury on a theory of the law substantially correct, and that the instructions were warranted by the evidence.

We see no error in this record, to the prejudice of appellants, calling for a reversal of the judgment, and it is accordingly affirmed. All the judges concur.