JAMES E. McCABE, Respondent, *v.* JOHN T. GOODFELLOW, Treasurer, etc., Appellant.

Under the provision of the Code of Civil Procedure (§ 1919), which authorizes an action against the president or treasurer of an unincorporated association consisting of more than seven members, upon any cause of action for which plaintiff could maintain an action against all of the associates, the plaintiff, to maintain the action, must allege and prove, and it must be found that all the members of the association were liable either jointly or severally to pay his claim.

The individual liability of the members of such an association, formed for moral, benevolent, social or political purposes, on contracts made by the association, its officers or committees, depends upon the application of the principles of the law of agency; authority to create such liability will not be presumed or implied from the existence of a general power to attend to or transact business or promote the objects for which the association was formed, except where the debt contracted is necessary for its preservation.

An association of inhabitants of a town, called a law and order ˍeague,·
was formed for the purpose, as stated in its constitution, of·assisting in
the enforcement of excise and corporate laws. The method of raising
funds for the prosecution of the work was, aside from collections at
meetings, by subscriptions to what was known as a guaranty fund, the·
subscribers pledging themselves to pay the sums subscribed in install-
ments as needed to carry on the work. Plaintiff, who was a member
and one of the subscribers to this fund, was employed by officers of the·
association as attorney to prosecute actions and legal proceedings insti-
tuted by it. In an action against defendant, as treasurer of the associa--
tion, to recover a balance alleged to be due for services so rendered, *held*,
that plaintiff was not entitled to recover; that no authority was given to·
the officers to contract debts, or to pledge the personal credit of the
members, and no intent shown on the part of the members to become
personally bound for any debt contracted by its officers; that, on the
contrary, the scheme of operations contemplated the raising of moneys,
to defray any proper expenses, and it fairly appeared that the members,
did not intend that åny debts should be contracted in excess of the funds,
so raised.

Such an association is not in any sense a partnership.

*National Bank* v. *Van Derwerker* (74 N. Y. 234), distinguished.

(Argued March 21, 1892; decided April 12, 1892.)

Appeal from judgment of the General Term of the Supreme·
Court in the fourth judicial department, entered upon an order
made July 7, 1891, which affirmed a judgment in favor of
plaintiff entered upon the report of a referee.

This action was brought to recover for services alleged to·
have been rendered by plaintiff, as attorney for the Law and
Order League of the town of Kirkland, of which defendant·
was treasurer.

The facts, so far as material, are stated in the opinion.

*C. D. Adams* for appellant. " The league " is not such an
association as is contemplated by section 1919, Code of Civil
Procedure. It is not shown by any evidence that all the·
members are·liable jointly, or in any manner. (Boone on
Corp. §§ 325, 326, 329, 331; Code Civ. Pro. §§ 1919, 1922,
1923; *Sizer* v. *Daniels*, 66 Barb. 426.) Plaintiff cannot main-
tain this action at law for his services against his associates,
the membership. (*McMahon* v. *Rumble*, 47 N. Y. 67; 16

id. 112 ; Boone on Corp. § 333.) The prevailing opinion at General Term proceeds upon the assumption that the league was a genuine joint-stock company, and that its officers and committees possessed the power to contract on the credit of the membership, by virtue of their office or position. This. is erroneous. (61 N. Y. 542 ; 102 id. 355 ; 50 Barb. 158 ; 117 N. Y. 136, 147, 148 ; 66 Barb. 426 ; 123 N. Y. 612 ; 22 Hun, 274.) Overseer Bellinger by attending the court where these cases were on the callender for trial and by then settling two of them, assumed all these cases and adopted such retainer for the town. (35 N. Y. 156, 157.) In each of the cases against Burge and Nolan, nothing was due the attorney, because the cases were not finished ; each was still pending. (59 N. Y. 533 ; 36 id. 255, 260.)

*S. M. Lindsley* for respondant. This Law and Order League is an unincorporated association, consisting of seven or more persons against whose treasurer an action may be maintained under the provisions of section 1919 cf the Code of Civil Procedure. (*N. Bank* v. *Vanderwerker,* 74 N. Y. 239 ; *Ebbinghonsen* v. *Worth Club,* 4 Abb. [N. C.] 300 ; *Flagg* v. *Swift,* 25 Hun, 623 ; Code Civ. Pro. § 1919 ; *Wells* v. *Monihan,* 35 N. Y. S. R. 495.) The action of the special or central and executive committees bound the association. (*Potter* v. *N. Y. I. Asylum,* 44 Hun, 367 ; *Bogardus* v. *Livingston,* 7 Abb. Pr. 428.) The fact that plaintiff was a member of the association does not prevent his maintaining this action. (*Westcott* v. *Fargo,* 61 N. Y. 542 ; *Saltsman* v. *Shults,* 14 Hun, 256 ; *Sanders* v. *Euling,* 8 Civ. Pro. Rep. 166 ; *Strebe* v. *Albert,* 1 C. C. Rep. 376 ; *Winter* v. *Manna,* 5 Civ. Pro. Rep. 196 ; *Gould* v. *Board of Education,* 34 Hun, 16.) If plaintiff were a member of the central committee, he was entitled to recover for his services as attorney and counsel. (*Jackson* v. *N. Y. C. R. R. Co.,* 2 T. & C. 653 ; 58 N. Y. 623 ; *Gould* v. *Board of Education,* 34 Hun, 16.) This action was properly brought in the name of the plaintiff, and not in the name of Williams & McCabe. (*Wood*

v. *E. R. R. Co.*, 72 N. Y. 196; *Guy* v. *Seybold*, 97 id. 472; *Barron* v. *Yost*, 35 N. Y. S. R. 380; *Bendel* v. *Hettrick*, 45 How. Pr. 202; 3 J. & S. 405; *Kell* v. *Nainby*, 10 B. & C. 20.) An attorney may, at any proper time, sever the relation of attorney and client and demand his pay. (*Bathgate* v. *Haskin*, 59 N. Y. 535; *Castro* v. *Bennett*, 2 Johns. 296.)

Maynard, J. This action must be upheld, if at all, under section 1919 of the Code of Civil Procedure, which provides that an action may be maintained against the president or treasurer of an unincorporated association consisting of seven or more persons, upon any cause of action for which the plaintiff might maintain such an action against all the associates by reason of their liability therefor, either jointly or severally. Under the subsequent sections of the Code (1921, 1922), the judgment recovered does not bind the property of the officer, and the execution issued must require the sheriff to satisfy it out of any personal property belonging to the association or owned jointly or in common by all the members thereof, but must omit any direction respecting real property.

Where such an action has been brought, another action for the same cause shall not be brought against the members of the association until the return unsatisfied, wholly or in part, of an execution upon a judgment against the officer. The plaintiff, however, is not bound to sue the officer, for section 1923 provides that he may, in the first instance, bring his action against all the members of the association. It will thus be seen that the right to maintain the action against the officer is conferred upon the plaintiff for his convenience and in order that he may more speedily reach the personal property of the association for the satisfaction of any judgment which he may recover. But the plaintiff cannot, in any case, maintain such an action against the officer, unless the debt, which he seeks to recover, is one upon which he could maintain an action against all the associates by reason of their liability therefor, either jointly or severally. This, therefore, is the test to be applied in the present case. The plaintiff

must allege and prove, and the court must find that all the members of the association were liable, either jointly or severally, to pay the plaintiff the amount of his claim, or the judgment in this action cannot stand.

The defendant was the treasurer of a Law and Order League, an association organized in and for the town of Kirkland, Oneida county, in December, 1886. It eventually consisted of two hundred and seventy members, of whom the plaintiff was one. It was formed pursuant to a resolution adopted at a public meeting of citizens, which declared that they voluntarily associated themselves together for the purpose of forming such a league, the object of which should be to give their personal and united influence, and, if need be, their material aid to assist the town and village officers in enforcing the excise and corporate laws. A constitution was at the same time adopted, to which each member subscribed his name, which stated that the object of the league should be to unite, as far as possible, all the orderly and law-abiding citizens of the town in giving moral support and aid in all proper ways to the village and town officers while in the discharge of their official duties, and to see that they were faithful in enforcing all village and town laws, and especially those intended to regulate the traffic in intoxicating drinks; and that the members of the league should consist, first, of all the members of the special or central committee composed of three persons appointed by each church and temperance society in the town and three members appointed by the league itself and, second, of all other persons willing to pledge themselves individually by signing the constitution, that they will give personal or material aid when needed to make effective the object of the league.

A president, two vice-presidents and a secretary were provided for, whose duties were defined to be the same as of those chosen in similar associations, and they were to constitute the executive committee of the special or central committee, and also of the league. Regular meetings of the executive and special committees were to be held on the third Tuesday

evening of each month, for the purpose of hearing reports and adopting such measures as their united counsel and wisdom might decide upon as necessary to carry out the letter and spirit of the league.

The method of raising funds for the prosecution of their work seems to have been in part by collections at meetings, but mainly by subscriptions to what was known as the guarantee fund, by which each subscriber pledged himself to pay a specific sum in such installments as might be needed to carry out the work of the enforcement of the excise laws. The plaintiff was one of the subscribers to this fund, which amounted to over $1,200. Whether all of the subscribers were members of the league does not appear.

The plaintiff, who is an attorney, sues for services rendered, as he alleges, in the prosecution of actions for penalties and in other legal proceedings brought and instituted by the association and under an employment by them. The referee has found that the league, through its officers, duly authorized agents and committees, retained him to perform these services and to bring these actions, and that his services were of the value of $1,850, including necessary disbursements; that he has received on account thereof $175, leaving $1,680 due and payable, for which judgment is ordered.

So far as this is to be considered as a finding that the individual members of the league became bound under any agreement, express or implied, to pay plaintiff for his services, we think it is a finding not supported by the evidence. We fail to discover anything in the organization of this association, or in its constitution, or professed objects, or in the methods which it adopted for the conduct of its affairs, which indicates an intention on the part of these members to become personally bound for any debts contracted by its officers and committees beyond what might be necessary for the maintenance of its existence. The scheme of its operations seems to have contemplated the raising of money by collections and voluntary subscriptions to be placed at the disposal of its committees for the purpose of defraying any

proper expenses which they might incur, and no authority was given to any officer, agent or committee of the association, to pledge without limit the personal credit of its members.

The transitory character of the organization also renders it improbable that the people who joined it ever intended to authorize the transaction of business upon their individual credit.

It was one of those spasmodic moral movements, which have their origin because of the laxity of the administration of the police regulations of the community, and which inevitably subside when the exigency for their creation has ceased, or when the zeal of their members has spent its force. The plaintiff belonged to the order, subscribed to its funds and must be charged with full knowledge of its scope and powers. It was not in any sense a partnership. In Lindley on Partnerships (2d Am. ed. p. 50) it is said: "It is a mere misuse of words to call such associations partnerships, and if liabilities are to be fastened on any of their members it must be by reason of the acts of those members themselves, or by reason of the acts of their agents, and the agency must be made out by the person who relies on it, for none is implied by the mere fact of association."

In this respect there is a plain distinction between associations formed for the purpose of pecuniary profit and those formed for other objects.

In *Natl. Bank* v. *Van Derwerker* (74 N. Y. 234), the association belonged to the former class and was engaged in a commercial enterprise, and it was shown that the officer contracting the debt had authority to bind its members. Such associations have, in fact, all the powers and incidents of a partnership and their transactions are governed by the law relating to such adventures; but associations formed for moral, benevolent, social or political purposes, rest upon a different basis. The individual liability of the members for contracts made by the association or its officers or committees, depend upon the application of the principles of the law of agency, and authority to create such liability will not be presumed or

implied from the existence of a general power to attend to or transact the business, or promote the objects for which the association was formed, except where the debt contracted is necessary for its preservation.

In *Flemyng* v. *Hector* (2 M. & W. 172), the committee had authority to " manage the affairs of the club," and it was held that the members were not individually liable for debts incurred by a committee for work done or goods furnished, as the committee had no authority to pledge the personal credit of its members.

In *Todd* v. *Emly* (7 M. & W. 427), a fund was subscribed to be administered by a committee and it was held that the authority of the committee was confined to the administration of the fund and that they were not empowered to deal upon credit except for such articles as it might be immediately necessary for them to have purchased on credit. So it has been held that the general regulation of a club vesting the conduct of all its concerns in a committee, does not authorize the committee to raise money by debentures, or otherwise to pledge the credit of its members. (*In re St. James Club*, 2 DeG., M. & G. 383.) Other English cases to the same effect are *Caldicott* v. *Griffiths* (8 Exch. 898); *Wood* v. *Finch* (2 F. & F. 447); *Bailey* v. *Macaulay* (19 L. J. [Q. B.] 73). These decisions have been followed by the American cases, *Ash* v. *Guie* (97 Pa. St. 493); *Ferris* v. *Thaw* (5 Mo. App. 279); *Richmond* v. *Judy* (6 id. 465); *Devoss* v. *Gray* (22 Ohio St. 159).

Granting that the members of the league had knowledge of the plaintiff's employment by their president, or by the general or executive committee and of the rendition of these services and ratified and approved of his retainer, it does not follow that they became personally obligated to pay them.

The record, we think, very clearly shows that they had no reason to suppose that the committee so employed the plaintiff upon their individual credit. On the contrary it fairly appears that they expected that his compensation, as well as the other expenses incurred by the officers and committees,

were to be met by the funds voluntarily contributed for that purpose and placed at the disposal of the committees and that they did not intend there should be any debts contracted in excess of those funds.

The plaintiff, as a member of the organization, must have so understood it. His conversations with the president and the letters put in evidence upon the subject, all refer to the moneys subscribed or contributed, as affording the means out of which he was to be paid. Having, therefore, failed to establish the liability of his associates for the debt, upon which he brought his suit, the plaintiff was not entitled to recover.

The order and judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed. _____