ANNA DOSCHER, Respondent, v. EDGAR VANDERBILT, as President of THE TEACHERS' MUTUAL LIFE ASSURANCE ASSOCIATION, Appellant.

First Department, April 5, 1917.

Voluntary unincorporated mutual life assurance association — liability of president under section 1919 of Code of Civil Procedure in action based on contractual obligation.

The by-laws of a teachers' mutual life assurance association, a voluntary unincorporated association consisting of more than seven members, provided for the payment upon the death of a member of $500 to the assignee of said member, and for an assessment of fifty cents to be collected from each surviving member, and the only penalty prescribed for the failure to pay an assessment was forfeiture of membership. In an action by an assignee of a deceased member against the president of the association under section 1919 of the Code of Civil Procedure to recover the death benefit solely upon the theory of a *contractual* obligation created by the constitution and by-laws, the defendant pleaded a general denial, and alleged as a defense that the association had been dissolved and had gone out of existence.

*Held*, that since there was no contractual obligation on the part of the members either jointly or severally to the beneficiaries of deceased members, no recovery can be had under said section of the Code of Civil Procedure, and that the complaint should be dismissed.

APPEAL by the defendant, Edgar Vanderbilt, as president, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on or about the 7th day of July, 1916, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Seventh District, in plaintiff's favor.

Defendant further appeals from the judgment so affirmed and from an order entered in said Municipal Court on the 28th day of December, 1915, denying defendant's motion for a new trial.

*William J. Moran*, for the appellant.

*George H. Taylor, Jr.*, for the respondent.

LAUGHLIN, J.:

The Teachers' Mutual Life Assurance Association, a voluntary unincorporated association, consisting of more than seven

members, was organized in May, 1869. Margaret Doscher, who was one of the original members, died on the 26th day of April, 1915, having performed all obligations and paid all assessments which she was called upon by said association to perform and pay until her death.

Article 7 of the by-laws of the association provided for the payment upon the death of a member of $500 to the assignee of the member. The plaintiff was the duly designated assignee of the decedent, and she brought this action against the president of the association under section 1919 of the Code of Civil Procedure to recover said death benefit.

The pleadings were oral. The plaintiff merely alleged generally a liability under said by-law. The answer was a general denial with the defense that the association has been dissolved and gone out of existence.

A preamble to the constitution provided that the object of the association to be formed was " to give to each and every member * * * the opportunity to leave at death, to a properly designated assignee, a sum hereinafter to be named," and said section of the by-laws fixed the sum as stated. Article 4 of the by-laws, from the inception of the organization, provided as follows: " Upon receiving from the Treasurer notice of the decease of a member, the Financial Secretary shall notify each Ward Collector of such death, and of the levy of an assessment of fifty (50) cents to be collected from each surviving member by the several Department Collectors.

" The money in excess of five hundred dollars ($500) shall be allowed to accumulate, and whenever it shall amount to one thousand and twenty dollars ($1,020) there shall be no call for assessment on the occurrence of a death."

Article 2 provided that the members should make " all proper provision to meet the prompt payment of assessments as they are levied." Article 3 provided that the membership of any person failing to pay an assessment should be forfeited *ipso facto*, and that he should be given notice thereof; but that where a membership was thus forfeited or any member " resigned " he might be reinstated as therein provided. There is no other provision in the constitution or by-laws relating to the termination of a membership in the organization. The

by-laws provided for the election of a collector by the members
in each department into which the organization was divided,
and that the collectors should elect ward collectors who
should constitute a board of managers, who should have
power "to choose their officers, to remove derelict or unfaith-
ful collectors, and to make, alter, amend, or abolish by-laws
as they may see fit." The officers provided for by the by-laws
were a president, vice-president, recording secretary, financial
secretary and treasurer. The defendant became the president
of the association in 1911. Thereafter the membership dimin-
ished through many deaths of the older members and resigna-
tions of younger members and the inability to obtain new
members. On the 30th of November, 1914, a letter was sent
to all of the members by the chairman of a special committee,
which evidently had been considering what it was advisable for
the association to do in the circumstances by which it was con-
fronted with financial disaster. The letter stated, in substance,
that the board of managers had determined that it was advisable
and necessary to discontinue the present plan of death benefits,
and that a plan had been negotiated with the Travelers
Insurance Company by which all members under sixty-five
years of age could be insured by that company for the amount of
death benefit provided by the by-laws of the association at a
cost much lower than a policy could be obtained from the insur-
ance company by any individual and at lower cost than assess-
ments in the organization; that members of sixty-five years of
age and upwards could obtain a policy in smaller amounts
stated at less than their assessments; that the benefits prescribed
by the by-laws of the association would lapse and become inef-
fective on a date to be fixed by the board of managers, and it
was suggested that members apply to the insurance company
in accordance with the plan thus negotiated. Thereafter and
on the 20th day of January, 1915, a notice in writing, signed
by the president and recording secretary, was mailed to each
member of the association, inviting them all to attend a meet-
ing to be held on the thirtieth day of the month to take action
along the lines recommended in said circular letter of November
thirtieth. This notice stated quite fully and clearly the cir-
cumstances which led the managers to believe that it was

impossible to continue the payment of death benefits by the association; and, in substance, that it was intended to pay all accrued death claims and liabilities of the association, and to eliminate from the constitution and by-laws the death benefit provisions, and to continue the fraternal features of the association. At that time the membership numbered between 1,300 and 1,400. The meeting called was attended by more than 200, but the decedent, although duly notified, did not attend, or, so far as appears, send any communication.

At that meeting a resolution, the object of which is not apparent, was adopted, providing that no ward collector should " dismiss from membership, any member whose name was on the roll, Dec. 1, 1914," and thereupon, after full and free discussion, a preamble and resolution was adopted as follows:

" WHEREAS, it is the judgment of our officers and managers that this association is not upon a safe, sound and enduring basis as respects its benefit or insurance features, and that to secure to the surviving members thereof and to those who may hereafter join this organization certain definite insurance benefits that this organization be reorganized, and that the members concur therein, and

" WHEREAS, with respect to such insurance it is the judgment of all that this organization be reorganized into a group of insured having relations with The Travelers Insurance Company.

" *Now, therefore,* be it *Resolved,* a quorum of the board of managers of this organization being present and concurring therein that the benefits of all living members in this organization be and they are hereby terminated and are hereby declared to have lapsed and become ineffective as of this 30th day of January, 1915, and be it further

" *Resolved,* that this association be continued only for the purpose of collecting from the members and distributing to the assigns of deceased members any death benefits that may have accrued and remain unpaid."

Thereupon another resolution was adopted providing for the auditing of the books and the termination of the liability of all fiscal officers and agents on the payment of accrued death benefits, and on their accounting in accordance with the audit. The meeting thereupon adjourned *sine die.*

At the close of that meeting those in attendance formed the "Teachers' Group Insurance Association of Greater New York," for membership in which 483 applications had been received. The decedent refused to join the new association.

On the 1st of January, 1915, an assessment of nine dollars had been levied against each member to cover eighteen death claims, which had accrued prior to that time. That assessment was payable in installments of two dollars monthly for four months, and one dollar for the fifth month. At the time of the death of decedent four dollars remained unpaid on this assessment, but it was paid on the thirteenth day of May thereafter, and it is not claimed that she had not paid the assessment to the extent that it had become due.

The plaintiff demanded payment of the death claim and on April 29, 1915, the secretary of the association, upon whom her demand was made, replied, stating that the association had been disbanded and that death claims of members dying after January thirtieth could not be considered by the old association. No other assessment was levied by the association. No evidence was offered with respect to the amount collected on the last assessment or with respect to the application thereof to the payment of death claims accruing prior to the end of January, 1915. It was shown, however, that at the time of the trial the sum of about eighty-six dollars was in the treasury.

It appears that the defendant was present at the meeting on January thirtieth, and that he joined and became chairman of the new organization. It is fairly to be inferred, therefore, that he not only acquiesced in but favored the action taken at that meeting. It would seem, therefore, that he withdrew from the old organization and necessarily ceased to be president thereof, at least excepting during the period for closing its affairs in accordance with the resolution. Interesting points have been argued on this appeal with respect to whether the officers of the association, including the defendant, who joined the new association ceased to be such and as to whether the association by the action taken has not been legally dissolved and as to whether in any event the death benefit by-law

thereof has not been lawfully abolished by the vote of a quorum of the board of managers; but it is, I think, unnecessary to discuss or to decide those questions. The action was brought and the recovery was had and is sought to be sustained, not upon the theory that it is to recover *property* in which the members are interested jointly or in common, but solely upon the theory of a *contractual* obligation created by the constitution and by-laws to pay a death benefit of $500 upon which all the members of the association are jointly or severally liable. It may be that if it were alleged and shown that the association had on hand funds collected by assessments to pay this death claim or otherwise available therefor, which should have been paid over to the plaintiff — the action would lie to recover such property on the theory that it was received and held for the use of the plaintiff. Such, however, is not this case. It appears that no assessment was levied for this death benefit, and while it was shown that the association had in the hands of its treasurer about $86 it was not shown that it was available for payment on this claim or that the plaintiff was entitled thereto. Some stress is laid in the opinion of the Appellate Term on the fact that there was *some* money in the treasury, but the learned counsel for the respondent does not claim that the action was brought to. recover any *property* to which the plaintiff claims ownership or to be entitled. His sole contention .is that the action is predicated on the contract to recover the amount of the death benefit for which all the members are jointly and severally liable. On that theory there can be no recovery unless the individual members are so liable, for with the possible exception of an action to recover *property*, which exception, however, the Court of Appeals in construing section 1919 of the Code of Civil Procedure has not recognized, no action can be maintained under that section unless the members of the association could have been held liable either jointly or severally on the cause of action without first bringing an action against the association and may be held liable jointly and severally for any balance not realized on an execution against the personal property of the association. (*McCabe* v. *Goodfellow*, 133 N. Y. 89; *Schouten* v. *Alpine*, 215 id. 225, 232; *People ex rel. Solomon* v. *Brother-*

*hood of Painters*, 218 id. 115, 123.)   The by-law provid-
ing for a death benefit of $500 is to be construed with
the by-law prescribing the duty of the members to con-
tribute thereto.   The former has no greater binding force
than the latter.   The individual liability of the members was
clearly limited to an assessment of fifty cents for each death.
The contention of the learned counsel for the respondent is
that the by-law with respect to the death benefit constitutes a
contract between the association and the beneficiary upon
which all the members are jointly and severally liable for the
entire amount, and the by-law relating to the assessments
merely constitutes an internal regulation between those liable
by which they contemplated that a sufficient fund would
thereby be provided, and that even if the liability to the plain-
tiff contemplated an assessment the members are liable jointly
and severally for the failure of the officers to levy and collect
the assessment.   Authorities are cited in which societies and
*associations* have been held liable on that theory; but the
actions were on policies or certificates issued by *corporations*
where there was and could be no joint or several liability of the
members.   (See *Stewart* v. *Thorburn,* 171 App. Div. 258;
*Ayers* v. *Order of United Workmen,* 188 N. Y. 280; *Wright*
v. *Knights of Maccabees,* 196 id. 391; *Freeman* v. *National
Benefit Society,* 42 Hun, 252; *O'Brien* v. *Home Benefit Soci-
ety,* 117 N. Y. 310.)   In the case at bar it is perfectly plain, I
think, that those who drafted the constitution and by-laws of
the association and organized and joined it did not intend, as
is claimed by respondent, to become jointly and severally liable
to each beneficiary for the entire amount of the death benefit.
The provision for the reinstatement of members who resigned
recognized the right of any member to resign at will; and the
only penalty prescribed for the failure to pay an assessment
was forfeiture of membership.   These provisions are incon-
sistent with a contractual liability on the part of each member
to beneficiaries for the whole amount of the death benefits
which would continue the association, unless it were dissolved
by unanimous consent, possibly until a particular beneficiary
was the last member who had not resigned or whose member-
ship had not been forfeited for non-payment of an assessment.

This was in a strict sense a *voluntary* association, not for engaging in business or with any expectation of profit, but for the mutual benefit of the members so long as they remained such in the form of death benefits to be paid from a fund *voluntarily* contributed by the members in paying assessments levied against them, but with no contractual obligation on the part of the members either jointly or severally to the beneficiaries of deceased members. (See *Cochran* v. *Boleman,* 162 Ind. 659; 65 L. R. A. 516.)

It follows, therefore, that the determination of the Appellate Term' and the judgment of the Municipal Court should be reversed and the complaint dismissed, with costs of the appeal in each court and of the trial.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Determination and judgment reversed, with costs, and complaint dismissed, with costs.