**HEYWOOD–WAKEFIELD CO. v. MINER et al.**

**SAME v. BERGEN et al.**

Nos. 4204, 4205.

Circuit Court of Appeals, Third Circuit.

Oct. 8, 1930.

Alexander T. Schenck, of Newark, N. J., for appellant.

A. J. Peer and Peer & Marr, all of Newark, N. J., for appellee Colyer.

A. J. Whinery, of Newark, N. J., for appellee Bunnell.

H. Edward Toner and Arthur T. Vanderbilt, both of Newark, N. J., for appellee Reeves.

Pierre F. Cook, of Jersey City, N. J., for appellees Antonie Miner and others.

Rudolph A. Huebner, of Newark, N. J., for appellees Bergen, Howe, and others.

David Bobker, of Newark, N. J., for appellee Hunt.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

There are two actions here. Thomas W. Miner, a member of the Citizens' Committee, died before he was served, and a new action, No. 4,204, was begun against the executor of his estate.

On January 27, 1926, the Heywood-Wakefield Company entered into a contract with the Greater Newark Baseball Club, Inc., for the sale of a specified number of chairs which were to be installed at Davids Stadium, Newark, N. J. The total amount due for the chairs actually installed was $32,763.60 to be paid as follows: "15% cash with contract; 25% cash on shipment; balance in 9 equal monthly notes at 6% interest, endorsed by Mr. C. A. Davids and deliverable at time of 2nd payment." The first payment of $5,531.-25 was made in accordance with the contract on or about January 27, 1926. On March 19, 1926, before the chairs were delivered, but while they were in transit from Chicago, Charles P. Lyman was appointed receiver of the Greater Newark Baseball Club, Inc., by the District Court. Edmund J. McQuade, contract manager of the Heywood-Wakefield Company, learning of the receivership, while the chairs were still in transit, reconsigned them to the Kenner Terminal Warehouse in Newark.

On April 12, 1926, Mr. McQuade and Mr. Fuller, representing the appellant Company, Mr. Lyman, and Mr. Thomas E. Miner had a conference at which Mr. Miner informed Mr. McQuade "that a citizens' committee had been appointed for the purpose of raising a fund and seeing that the ball club was put into operation."

Thereafter on or about April 12, 1926, Mr. Fuller, attorney of the appellant, prepared and Mr. Miner signed the following letter and sent it to Mr. Reeves for his signature:

"Greater Newark Baseball Club, Inc.
"International League
"Davids Stadium
"Temporary Office
"Room 65, Proctor Theatre Building,
"Telephone Mulberry 0307
"Wilson Avenue, Newark, New Jersey.
"April 12, 1926.
"Heywood-Wakefield Co.,
"New York City.
"Gentlemen:
"We hand you our check for $9,389.17 being for payment of $8,734.19 on your conditional sale contract with Greater Newark Baseball Club, Inc., plus storage, etc. charges $654.98.

"You will proceed at once to install the chairs under the contract and as soon as the installation is completed, we will pay the balance due you under the contract in cash, and you will assign to us all your rights under the said contract less the cash payment of $5531.-25 made on signing the contract.

"Yours very truly,
"Greater Newark Baseball Club, Inc.
"Citizens' Committee
"Thomas W. Miner.
"Trustee
"P. E. Reeves,
"Trustee.
"Accepted
"Witness."

This letter constitutes the contract on which the appellant bases its action in these two cases. After Mr. Reeves signed the letter, it was sent to Mr. McQuade, with a check of the Citizens' Committee for $9,389.17, which represented the second payment.

At the time this letter was signed and sent, Mr. McQuade had not seen and did not know any member of the Citizens' Committee except Mr. Miner.

Thereafter Percy E. Reeves, substituted receiver of the Greater Newark Baseball Club, Inc., made further payments as follows: On May 21, 1927, $2,500; on June 17, 1927, $2,000; and on August 16, 1927, $4,-000. In addition, the receiver was unable to keep up the payments and the assets of the club were sold on September 7, 1927, and the appellant filed a claim for and received in January, 1929, a dividend in the distribution of the proceeds of the sale of $3,625.77. This

leaves a balance as calculated by the parties due appellant of $6,372.39, principal, and $2,238.25, interest, making a total of $8,610.64.

The plaintiffs brought suit against the defendants whose names appeared on the list of the Citizens' Committee on the ground that the letter. of April 12, 1926, constituted an agreement with the plaintiff whereby the defendants agreed that the plaintiff should install the chairs under the original conditional sales contract "and the defendants promised to pay the balance due to the plaintiff under said contract, in cash." At the conclusion of the plaintiff's case, the learned trial judge directed a nonsuit on the ground that the letter was a guaranty or suretyship by the Citizens' Committee, and the plaintiff, which had retained title to the chairs, by permitting the receiver to sell them instead of removing them from the stadium as it had the right to do under the terms of the contract, so changed the status of the Citizens' Committee that it could not recoup the losses sustained; that by so doing and by filing a claim for a dividend it elected to rely upon the original contract and not upon the suretyship or guaranty of the committee. The plaintiff has brought the case here on appeal.

The different defendants are represented by various counsel who have based their appeal upon two other grounds than that of suretyship: (1) The plaintiff from the beginning relied upon the fund raised and to be raised by the Citizens' Committee; and (2) the Statute of Frauds, § 5 (2 Comp. St. N. J. 1910, p. 2612), which provides: "That no action shall be brought * * * to charge the defendant, upon any special promise, to answer for the debt, default or miscarriage of another person * * * unless the agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

At the conference attended by Messrs. McQuade, Fuller, Miner, and Lyman, Mr. McQuade was told that the committee was raising $100,000 and more. It was then agreed that the letter of April 12, 1926, was to be written and the chairs installed. It is evident that the plaintiff expected to be paid from the fund which was being collected and relied upon it and not upon the credit of the individual members.

The plaintiff, the Citizens' Committee, and the public generally understood that payment was to be made from the funds raised by this committee and no one had an idea that any member of this committee was pledging his individual credit for the payment of these chairs. But payment out of this fund was to be made under the terms of the original contract. The check which accompanied the letter was a "payment of $9,734.19 on your conditional.sales contract with the Greater Newark Baseball Club, Inc."

The committee had meetings, their work was publicly announced in the newspapers, and each member was authorized to receive subscriptions. The letter was signed, not by the individual members of the committee, but by the Greater Newark Baseball Club, Inc., and by Thomas W. Miner and P. E. Reeves, trustees of the fund which was being raised. This shows that everybody relied upon this fund, and not upon the credit of the individual members of the committee. The capacity in which they were acting was understood and they could not be held individually. Little Rock Furniture Co. v. Kavanaugh, 111 Ark. 575, 164 S. W. 289, 51 L. R. A. (N. S.) 406, Ann. Cas. 1916A, 848; McCabe v. Goodfellow, 133 N. Y. 89, 30 N. E. 728, 17 L. R. A. 204.

Whatever the idea of the plaintiff might. have been, the Statute of Frauds in New Jersey, which is quoted above, is a bar to this action. If the plaintiff. seeks to recover on the ground that the amount due it is the debt or default of the Greater Newark Baseball Club, Inc., it cannot prevail because the agreement, the letter of April 12, 1926, upon which it brought the action, was not signed by the defendants, and under the statute, they may not be charged therewith and there is no sufficient evidence that Miner and Reeves had authority to sign for them or in any way bind them personally to pay the debt. And so if the alleged liability is predicated upon the original debt as the letter seems to make it, the statute bars recovery.

If, on the other hand, it is sought to recover on the ground that this is an independent obligation of the defendants, as appellant intimates in its brief, this may not be done for the reason that the letter was not signed by them and there is no competent evidence to show that Miner and Reeves who signed it as "trustee" were agents of the defendants or had authority to bind the other defendants. There were no negotiations of any kind between the plaintiff and any of the defendants except Mr. Miner. The letter purported to be signed by the "Greater New-

155

ark Baseball Club, Inc.," and the "Citizens' Committee." But at that time the Baseball Club was in the hands of a receiver and was enjoined from performing its contracts. These names were doubtless written by Mr. Miner, but that did not obligate the Greater Newark Baseball Club, nor the individual members of the Citizens' Committee personally, and this was known by the plaintiff. No attempt was made to show that the individual members of the committee assumed personal liability except by the introduction of the minutes of their meeting and of the meeting of the "finance committee." The evidence shows that the business of the committee was to disburse such funds as might be required from the $150,000 which the public-spirited citizens of Newark had contributed to save the Baseball Club. None of the defendants ever pledged their individual credit or ratified any act having that effect. It is true the letter stated "as soon as the installation is completed we will pay the balance due you under your contract, in cash". Having no authority to bind any of the committee personally, this could bind no one but Miner and Reeves, but they signed only in their capacity as "trustee" of the fund and may not be bound personally.

In the meeting of the finance committee of the "Greater Newark Baseball Club, Inc.," on April 18, 1926, the following minute appears:

"The Trustees, on behalf of the Citizens' Committee have purchased from the Heywood Wakefield Company, their contract with the Greater Newark Baseball Club for seats in the Stadium as follows:

Contract ....................... $35,646.20
Addition ....................... 654.98
_____
$36,301.18

"Against which Citizens' Committee have paid $9,389.17.

"The Citizens' Committee have agreed upon completion on accepted installation of chairs to pay the balance to the Heywood Wakefield Company and receive an assignment of all titles, rights and interest in the contract subject to an initial cash payment of $5,531.25 made by Greater Newark Baseball Club on signing of the contract."

But in addition to Miner and Reeves only three others were present: Currier, Roehm, and Bunnell. This mere recitation of what the "trustees" of the fund had done cannot bind the members of the committee personally.

The fact seems to be that the plaintiff had made a sale of a large number of chairs, the purchaser had gotten into financial difficulty, and the arrangement which it made was the best it could do under the circumstances and it took a chance. It filed its claim against the Greater Newark Baseball Club, Inc., and saved what it could.

The plaintiff says that the contract was not one of suretyship and that it cannot recover on that theory. The learned District Judge thought that it was, but that the status of the surety had been so changed that plaintiff could not succeed on that basis. Whether the judge or plaintiff is right need not be decided, for both agree that recovery may not be had on that ground, and we think that conclusion is sound.

The judgment of the District Court is affirmed.