Empire City Job Printing Co., Inc., Appellant, *v.* Samuel Falk and Others, Respondents, and James G. Harbord and Others, Defendants.*

Supreme Court, Appellate Term, First Department, May 24, 1934.

* Revg. *Empire City Job Print, Inc.,* v. *Harbord* (148 Misc. 231).

*Jenks & Rogers* [*Gustavus A. Rogers* and *Jack L. Rappoport* of counsel], for the appellant.

*Arnold Dumey* [*Samuel Falk* of counsel], for the respondent Samuel Falk.

*Keyes Winter*, for the respondent Joseph Clark Baldwin, III.

*Oliver B. James*, for the respondent Keyes Winter.

CALLAHAN, J.   Plaintiff sold and delivered certain banners which were used in the political campaign held in the city of New York in 1929.   It received the order for the goods from the defendant Falk, who signed in the name of the " Republican Fusion Campaign Committee."   At that time a campaign committee was formed or in process of formation under that name.   A separate finance committee was organized for the purpose of collecting funds to meet the campaign expenses.   Defendant Winter was " campaign manager " or executive director of campaign activities.   Defendant Baldwin was treasurer of both committees.   The respondents and other defendants were sued on a complaint alleging the customary count of goods sold and delivered.   The action was discontinued as to the other defendants.   Plaintiff recovered a verdict at the hands of the jury against the respondents, but the trial court set it aside and dismissed the complaint, having reserved decisions on motions for that relief.   The verdict was set aside solely on the law.   If a cause of action was established against these defendants, allowing plaintiff the most favorable inferences from the proof, the dismissal of the complaint was improper.   We think that a cause of action was established against all of the defendants.   However, a number of questions of fact that arose upon the trial were not submitted to the jury.

Plaintiff's president testified to his securing orders for the goods from Falk, and plaintiff then called the three respondents as its witnesses.   As would be expected under the circumstances, plaintiff's case contains much evidence favorable to the defendants' contentions but it also reveals many facts from which inferences might be drawn which would be unfavorable to defendants.   For instance, while Falk testified that he was not a member of the campaign committee, we find in a document signed by him after the campaign a statement in which he appears to refer to himself as such a member.   If he was a member, having given the order in suit, he undoubtedly would be liable as a joint principal, at least unless the plaintiff agreed to look only to the funds contributed for payment.   Falk testified that in other campaigns plaintiff's

president had waited for payment until funds were subscribed, but that in this campaign and in connection with this bill no promise in that respect was made. Assuming that thereby there arose an issue as to whether plaintiff was to look solely to contributions, we find that neither this issue nor that of Falk's membership on the committee was submitted to the jury.

Though the complaint alleged goods sold and delivered, at the close of the case defendant's counsel moved to compel the plaintiff to elect whether it sought to hold Falk on such count or for breach of warranty of agency. Other references to the latter issue indicate that the parties deemed it present though not pleaded. Treating the pleading as amended to conform to the proof in this regard, and because of contradictions in the proof as to whether the committee was in fact in existence at the time the order was given and as to whether Falk exceeded his authority, the question of Falk's breach of warranty of agency might also have been submitted to the jury. The issue concerning Falk's authority was raised by his own testimony. He said that he was authorized to purchase supplies by the candidate of the Fusion party for mayor, but did not show that the committee approved or ratified such authorization. However, Winter, at one point, testified that there was no doubt that the committee had authorized Falk to contract in its behalf. There thus appears from the proof several theories on which Falk might have been held liable.

The question of the liability of Winter and Baldwin bring up different and more difficult questions. While these defendants disclaimed any knowledge of the issuing of the particular order in suit there appeared from the proof circumstances from which the jury might be justified in finding that such defendants were cognizant of the purchase of the goods by Falk and the use of them by the campaign committee. These defendants conceded Falk's authority to buy ordinary supplies in the name of the committee. Both of these defendants were members of the campaign committee. In fact, they were much more than ordinary members; they were the men actively in charge of the direction of the campaign. Though they may have had no direct contact with plaintiff nor any knowledge of this particular order before it was given, as previously stated, they learned of the purchases later and the evidence justified a finding that they ratified the purchases in behalf of the committee. More than that, it appeared from the proof that discussions were had in which the amount to be spent for this class of advertising was budgeted or allotted and that there was no direct testimony that Falk's authority was limited to the expenditure of amounts contributed or to be contributed, nor any proof that the

sums contracted for by him exceeded the amount allotted for such supplies.

We think that these circumstances justified the submission to the jury of the question of the liability of these two defendants as members who approved or ratified purchases by Falk on a credit basis. However, again we find that such issues were not submitted. The sole question left to the jury was whether these defendants individually pledged their credit.

We are not unmindful of the authorities exempting from liability ordinary members of non-profit membership associations for contracts made in the name of the association by officers or agents. *McCabe* v. *Goodfellow* (133 N. Y. 89) and *Hale* v. *Hirsch* (205 App. Div. 308) may be cited as examples of such cases. Those cases, however, involved the question of liability of all the members of the association, merely by reason of membership, for debts contracted by officers or executive committees of the association. In the instant case we are considering the liability of those members who made or expressly ratified the contracts in question. Many of the statements in the cases concerning non-liability of ordinary members for obligations created in the name of the association by others would have no application to the question of the liability of the members who actually entered into contracts in the name of the association, or approved or ratified the action of an agent in entering into same. Ordinary members of such an association would be liable for debts so created only to the extent of the authority they conferred on the executives or purchasing agent to bind them. The executives, being members, if they made or approved of a contract of purchase in the name of the committee and on the committee's credit, would seem to be liable as principals. (Wrightington Unincorporated Associations, 382.) It is true that in *McCabe* v. *Goodfellow* the Court of Appeals said that mere knowledge of or ratification by ordinary members of debts incurred by an officer or executive committee, did not necessarily obligate such members to pay personally. This, because, as the court said, these members might reasonably suppose that the obligations would be met by funds contributed and that the contributions would not be exceeded when the debts were contracted. But the court was discussing the question of liability of inactive members for the acts of their agents. The reasoning advanced would not seem to apply to the question of liability of a campaign manager or a treasurer who, with knowledge of the amount of funds in hand, fixed a budget for expenditures in advance of contributions, especially if such officer contracted or approved of the contracting of debts, in the name of the committee, limited not by the con-

tributions received but solely by his determination as to how much should be spent. If an executive of such an association desired to limit his liability to funds contributed he could readily do so by obtaining the consent of the creditor to such a limitation or by so limiting the authority of the association's agents. Whether any such limitation existed here, as well as the other questions indicated, were for the jury.

Judgments reversed and a new trial ordered, with costs to appellant to abide the event.

All concur; present, HAMMER, CALLAHAN and SHIENTAG, JJ.