(97 App. Div. 187.)

## LIGHTBOURNE v. WALSH.

(Supreme Court, Appellate Division, Second Department. September 29, 1904.)

1. ASSOCIATIONS — OBLIGATIONS — LIABILITY OF MEMBERS — SUIT AGAINST TREASURER.

A political party maintained a co-operative organization, with a formal constitution, providing for national, state, and local branches. The members of the party joining such organization were required to pay monthly dues, and submit themselves to the jurisdiction of the association. The constitution provided that the association should publish a newspaper, to be managed by trustees, to be elected by the national party convention, which election should be approved by a general vote of the entire party, and that such trustees should hold the paper in trust, subject to the constitution and resolutions of the party affecting its management. *Held,* that where plaintiff, a member of the organization, was employed to render services on such paper, and had no reason to expect that his compensation was to be met by funds other than those voluntarily contributed, the members of the organization were not individually liable for such services, so that an action was not maintainable therefor against its treasurer, under Code Civ. Proc. § 1919, authorizing suits against the president or treasurer of an unincorporated association consisting of seven or more persons on a liability for which the associates are personally liable to plaintiff.

Appeal from Municipal Court, Borough of Brooklyn.

Action by Henry E. T. Lightbourne against Timothy Walsh, as treasurer of the Socialist Labor Party. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Benjamin Patterson, for appellant.
Nathan Burkan, for respondent.

HIRSCHBERG, P. J. This action is brought pursuant to the provisions of section 1919 of the Code of Civil Procedure, which authorize the maintenance of a suit against the president or treasurer of an unincorporated association consisting of seven or more persons upon any cause of action for which the associates are personally liable to the plaintiff. The claim is for services rendered

by the plaintiff as a linotype operator in the printing of the newspaper Daily People, which is an official party organ of the political organization known as the Socialist Labor Party, published in the city of New York, borough of Manhattan. The party has a sufficient following to entitle it to a place upon the official ballot in this state, and it periodically places candidates in nomination who appeal to the general suffrages of the people. But, aside from the qualified membership in the party which may be assumed to attach to the mere voting of the ticket, there is a separate and distinct party organization modeled in the form usually adopted for the creation of co-operative societies, with a formal constitution providing for national, state, and local branches. The members of the party who join this organization are required to pay monthly dues, and to submit themselves to the jurisdiction and the discipline of the association. The constitution provides that the Daily People shall be one of the official party organs, to be managed by a board of trustees consisting of three members of the party, to be elected by the national convention, but whose election must be "specifically approved by a general vote of the whole party," and which board "shall hold the property of the official party organs in trust, subject to the constitution and resolutions of the party affecting their management." The printing plant and machinery of the newspaper in question, in common with the other organs of the party, appears to have been acquired by means of a fund obtained from voluntary contributions. The plaintiff is a member of the formal party organization, and was employed by a member of the board of trustees who was in charge of the management of the paper, and the answer, by not denying, admits the allegation of the complaint that the defendant is the treasurer of the party. But the serious question presented by the appeal is whether the members of the party organization are individually liable for whatever debts may be contracted in the running of the newspaper and the general conduct of the printing business, so as to bring the case within the provisions of section 1919 of the Code of Civil Procedure. The solution of that question depends upon whether it can be fairly said that it was within the contemplation of the parties concerned that such a liability should be created by the authority conferred upon the trustees in the publication of the party organs and the conduct of the business necessarily incident thereto.

In the case of McCabe v. Goodfellow, 133 N. Y. 89, 30 N. E. 728, 17 L. R. A. 204, the Court of Appeals held that the plaintiff, in order to maintain an action against the president or treasurer of an unincorporated association, must allege and prove that all the members of the association were liable either jointly or severally to pay his claim. It is true that in that case the organization created was transitory in character, having for its object the temporary enforcement of police regulations in a limited community; but it was apparent to the court that the parties to the league contemplated that all expenses would be defrayed by voluntary collections and subscriptions, and that the people who joined the

association never "intended to authorize the transaction of business upon their individual credit." It was held in that case that the individual liability of the members of an association formed for moral, benevolent, social, or political purposes, on contracts made by the association, its officers or committees, depends upon the application of the principles of the law of agency; and that authority to create such liability would not be presumed or implied from the existence of a general power to attend to or transact business, or promote the objects for which the association was formed, except where the debt contracted is necessary for its preservation. The court said (page 94, 133 N. Y., page 729, 30 N. E., 17 L. R. A. 204):

"We fail to discover anything in the organization of this association, or in its constitution, or professed objects, or in the methods which it adopted for the conduct of its affairs, which indicates an intention on the part of these members to become personally bound for any debts contracted by its officers and committees beyond what might be necessary for the maintenance of its existence. The scheme of its operations seems to have contemplated the raising of money by collections and voluntary subscriptions to be placed at the disposal of its committees for the purpose of defraying any proper expenses which they might incur, and no authority was given to any officer, agent, or committee of the association to pledge without limit the personal credit of its members."

The language quoted is quite as applicable to this case as to the one in which it was written. There is certainly nothing in the constitution of the Socialist Labor Party which tends to indicate that the members should be pecuniarily bound beyond the payment of their monthly dues. The publication of the newspaper was dependent wholly upon the voluntary subscriptions. No authority appears to have been conferred for the contraction of debts in excess of the funds so created; and the national character of the association, with its membership scattered all over the country, precludes the assumption that such members contemplated the pledging of their personal credit to the conduct of a business in the city of New York. Moreover, the plaintiff contracted not upon the faith of such credit, but solely in reliance upon the fund which had been raised by voluntary subscription, which he testified "was used to run the paper and pay all expenses incurred in running it," and from which he said that he expected to get his wages. The language of the opinion in McCabe v. Goodfellow (page 96, 133 N. Y., page 730, 30 N. E., 17 L. R. A. 204) is accordingly peculiarly applicable:

"Granting that the members of the league had knowledge of the plaintiff's employment by their president or by the general or executive committee, and of the rendition of these services, and ratified and approved of his retainer, it does not follow that they became personally obligated to pay them. The record, we think, very clearly shows that they had no reason to suppose that the committee so employed the plaintiff upon their individual credit. On the contrary, it fairly appears that they expected that his compensation, as well as the other expenses incurred by the officers and committees, were to be met by the funds voluntarily contributed for that purpose and placed at the disposal of the committees, and that they did not intend there should be any debts contracted in excess of those funds. The plaintiff, as a member of the organization, must have so understood it. His conversations with the presi-

dent and the letters put in evidence upon the subject all refer to the moneys subscribed or contributed as affording the means out of which he was to be paid." |

The plaintiff, having failed to establish the liability of his associates to pay his claim, or that his claim was incurred upon the faith of an agency, either express or implied, to pledge their credit for its payment, could not recover against the defendant, as treasurer of the party, and the judgment must therefore be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.