HARRY MARTIN, Appellant, *v.* JOSEPH CURRAN et al., Individually and as Officers of National Maritime Union of America, Constituting the Editorial Board of Said Union, et al., Respondents.

Argued May 24, 1951; decided October 18, 1951.

*Samuel Lawrence Brennglass, Morris Alfred Vogel* and *Bernard Fremont* for appellant. I. A union is liable for defamatory matter published in its official organ in the regular

course of its business, by its top officers acting in the course and within the scope of their employment and authority. Express allegation that the libel was authorized or ratified by the membership is unnecessary. (*Kirkman* v. *Westchester Newspapers, Inc.*, 287 N. Y. 373; *National Protective Assn.* v. *Cumming*, 170 N. Y. 315; *United Mine Workers* v. *Coronado Coal Co.*, 259 U. S. 344; *United States* v. *White*, 322 U. S. 694; *United States* v. *United Mine Workers*, 330 U. S. 258; *United Mine Workers* v. *United States*, 177 F. 2d 29, 338 U. S. 871; *Busby* v. *Electric Utilities Employees Union*, 147 F. 2d 865; *Ostrom* v. *Greene*, 161 N. Y. 353; *Crane* v. *Bennett*, 177 N. Y. 106; *Van Aernam* v. *Bleistein*, 102 N. Y. 355; *Pandolfo* v. *Bank of Benson*, 273 F. 48; *National Variety Artists* v. *Mosconi*, 169 Misc. 982; *Glauber* v. *Patof*, 294 N. Y. 583.) II. Section 876-a of the Civil Practice Act is no bar to the maintenance of this action. (*Lubliner* v. *Reinlib*, 184 Misc. 472; *Van Arsdale* v. *Fitzgerald*, 89 N. Y. S. 2d 535, 276 App. Div. 826, 300 N. Y. 737; *Opera on Tour, Inc.* v. *Weber*, 285 N. Y. 348, 286 N. Y. 565, 287 N. Y. 649, 314 U. S. 615; *American Guild of Musical Artists* v. *Petrillo*, 286 N. Y. 226; *Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union*, 288 N. Y. 188; *London Character Shoe Corp.* v. *Davis*, 263 App. Div. 865.) III. Paragraphs 13 and 15 of the complaint are relevant and material allegations. It was error to strike them out. (*Van Arsdale* v. *Time, Inc.*, 35 N. Y. S. 2d 951, 265 App. Div. 919; *Solomon* v. *La Guardia*, 267 App. Div. 435; *Ross Industries Corp.* v. *Bentley*, 268 App. Div. 897; *Bingham* v. *Gaynor*, 135 App. Div. 426; *Cassidy* v. *Brooklyn Daily Eagle*, 138 N. Y. 239; *Fry* v. *Bennett*, 28 N. Y. 324.)

*Sidney Dickstein, Herman E. Cooper, H. Howard Ostrin* and *Samuel Leigh* for Joseph Curran and others, respondents. I. The complaint fails to state a cause of action against National Maritime Union and against defendants Curran and Stone in their representative capacities as officials of NMU. II. The complaint fails to allege that the membership of NMU either authorized, participated in or ratified the alleged libelous statements, or that there was fraud or bad faith on the part of the membership. (*Friedman & Co.* v. *Amalgamated Clothing Workers of America*, 115 Misc. 44; *Mazurajtis* v. *Maknawyce*, 93 Misc. 337; *Tannenbaum* v. *Hofbauer*, 142 Misc.

120.) III. A voluntary unincorporated, nonprofit association may not be held liable through the individual acts of its officers in the absence of pleading and proof of the liability of the membership as a whole. (*Lubliner* v. *Reinlib*, 184 Misc. 472; *Lloyd* v. *Sloan*, 259 App. Div. 615; *McCabe* v. *Goodfellow*, 133 N. Y. 89; *Schouten* v. *Alpine*, 215 N. Y. 225; *People ex rel. Solomon* v. *Brotherhood of Painters*, 218 N. Y. 115; *Browne* v. *Hibbets*, 290 N. Y. 459; *Shapiro* v. *Gehlman*, 244 App. Div. 238; *Blek* v. *Wilson*, 262 N. Y. 253; *Ostrom* v. *Greene*, 161 N. Y. 353; *Lightbourn* v. *Walsh*, 97 App. Div. 187.) IV. Appellant has urged no cogent reasons for the overruling of prior decisions. V. The alleged libel arises out of a labor dispute within the meaning of subdivision 6 and paragraphs (a) and (c) of subdivision 10 of section 876-a of the Civil Practice Act. (*Lubliner* v. *Reinlib*, 184 Misc. 472.) VI. The allegations contained in paragraphs 13 and 15 of the complaint were properly stricken as irrelevant and prejudicial. (*Mencher* v. *Chesley*, 297 N. Y. 94; *Dinwiddie* v. *Rochester News Corp.*, 132 Misc. 876; *Burnham* v. *Hornaday*, 130 Misc. 207.)

*William L. Standard* and *Edward J. Malament* for Ferdinand C. Smith and others, respondents.

DESMOND, J. By its certified question the Appellate Division has asked us to decide whether that court acted correctly in dismissing this complaint, for insufficiency, as against defendants-respondents Curran, Smith, Stone, Myers, McKenzie and Lawrenson, in their representative capacities as officers of the National Maritime Union. The suit, which is at law for damages on account of a libel published in the union's official newspaper, is, by the Appellate Division's order, allowed to stand as against those same defendants, individually. The Appellate Division's reason for dismissing it as to the officers as such, was that " The allegations of the complaint are insufficient to show that the libel complained of was authorized or ratified by the members of the union, an unincorporated association " (273 App. Div. 980), citing *McCabe* v. *Goodfellow* (133 N. Y. 89); *Schouten* v. *Alpine* (215 N. Y. 225) and *Lightbourn* v. *Walsh* (97 App. Div. 187). We agree that those cases, and many others, which apply section 13 of the New York General Associations Law, make impossible the maintenance of this action against these defend-

ants as officers of the union, since there is in this complaint no allegation that the individual members of the union authorized or ratified the tort complained of.

The complaint does say that the newspaper is the union's official organ, that it has a circulation of about 125,000 copies, that it is published to accomplish the union's purposes by these defendants who have been constituted by the union as its editorial board, and that the defamatory articles concerning plaintiff were written by and under the directions of that board. Those averments, however, fall far short of asserting that the union members themselves authorized or ratified the particular libels. Indeed, plaintiff does not claim that his complaint charges authorization or ratification. The Appellate Division gave plaintiff permission to serve an amended complaint to allege " membership participation in the publication of the libel " but no such amended pleading was forthcoming.

Much of appellant's brief is given over to the policy argument that large associations like the National Maritime Union should be held accountable for defamations appearing in their widely circulated periodicals. The rule to be preferred, says appellant, is that of *Pandolfo* v. *Bank of Benson* (273 F. 48), which held such a group suable for libel. But such considerations of policy cannot be allowed to control our decision when, as here, we are under the command of a plainly stated, plainly applicable statute, uniformly held by this court, for many years, to require pleading and proof of authorization or ratification by all the members of the group.

A voluntary, unincorporated membership association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members (*Ostrom* v. *Greene,* 161 N. Y. 353, 361; see *Niven* v. *Spickerman & Stever,* 12 Johns. 401). No agency of one member for another is implied (*McCabe* v. *Goodfellow,* 133 N. Y. 89, 95, *supra*). " A part of the members of a voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it " (*Sizer* v. *Daniels,* 66 Barb. 426, 432–433). So, until the passage of the statutes which were the precursors of article 3 of the present General Associations Law, all the members of such a group were necessary parties defendant in any

suit on an alleged association liability, and could not be sued through their officers (*Van Aernam* v. *Bleistein,* 102 N. Y. 355, 358). The privilege of naming as defendants, and serving, the officers only, was first conferred by statutes in 1849 (ch. 258) and 1851 (ch. 455). That statutory authorization has found its way, through the old Code of Civil Procedure, into section 13 of our present General Associations Law, which provides that: " An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or owner-ship, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."

That privilege was conferred by the Legislature on plaintiffs for their " convenience " (*McCabe* v. *Goodfellow, supra,* p. 92), and created no new substantive right or liability (see *Tibbetts* v. *Blood,* 21 Barb. 650; *Corning* v. *Greene,* 23 Barb. 33, affd. 26 N. Y. 472, n.). The liability to be enforced in any such suit, in which association officers are named as representative defendants, is still that of the individual members as indi-viduals, and so the cause of action has to be one " for or upon which the plaintiff may maintain such an action  *  *  * against all the associates, by reason of their  °  *  *  liability therefor, either jointly or severally " (General Associations Law, § 13). A plaintiff " cannot, in any case, maintain such an action against the officer, unless the debt, which he seeks to recover, is one upon which he could maintain an action against all the associates by reason of their liability therefor, either jointly or severally " wrote this court in *McCabe* v. *Goodfellow* (p. 92), the leading case, and the line of consistent decisions to that effect has been unbroken from *McCabe* v. *Goodfellow* to *Glauber* v. *Patof* (294 N. Y. 583). The line includes not only contract but tort cases (*Schouten* v. *Alpine, supra; People ex rel. Solomon* v. *Brotherhood of Painters,* 218 N. Y. 115, 123; *Havens* v. *King,* 221 App. Div. 475, affd. *sub nom. Havens* v. *Dodge,* 250 N. Y. 617). Indeed, this court cited *McCabe* v. *Goodfellow,*

a contract case, as its authority for holding, in one of those tort cases, that the claim had to be one "for which an action might be maintained against the thirty thousand members of the United Association" (*Schouten* v. *Alpine,* 215 N. Y. 225, 232, *supra*). And in *Havens* v. *King* (*supra*) the Appellate Division said that "in the absence of bad faith the members of the association cannot be held liable in damages *as joint tort feasors*" (p. 482, emphasis supplied).

So, for better or worse, wisely or otherwise, the Legislature has limited such suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven. Despite procedural changes, substantive liability in such cases is still, as it was at common law, "that of the members severally" (*Sperry Products, Inc.,* v. *Association of Amer. R. R.,* 132 F. 2d 408, 410, certiorari denied 319 U. S. 744). "In the kind of association now under consideration, only those members are liable who expressly or impliedly with full knowledge authorize or ratify the specific acts in question" (Wrightington on Unincorporated Associations and Business Trusts, § 64).

It may seem anomalous, but it is not otherwise important for our purposes, that under section 16 of the General Associations Law, this plaintiff, if he could serve a sufficient complaint against these officers and should thereafter get judgment but fail to collect it from the association's funds, could bring another suit for the same tort against the members themselves, to reach their separate assets, "as if the first action had not been brought". In other words, he would have to plead and prove, all over again, the members' own liability (see *Witherhead* v. *Allen,* 3 Keyes 562). But, anomalous or not, such is the law, and this court does not revise statutes, in an effort to eliminate seeming injustices, or to bring the law into accord with modern fact. Whatever reasons be pressed on us for such changes, the power to change is not ours. It is for the Legislature to decide whether or not to overhaul these settled rules, after hearing both sides, and after considering the interests of the general public as well as those of the innumerable members of these associations.

Nothing in *Kirkman* v. *Westchester Newspapers, Inc.* (287 N. Y. 373) controls our decision here. There we were dealing with a libel suit brought, pursuant to section 12 of the General Associations Law, on behalf of union members, by their officers. Finding in the complaint allegations justifying the conclusion that the particular union's reputation was " the common property of its members as such " (p. 380), we held that there was sufficient compliance with the requirements of section 12, that the cause of action be one upon which " all the associates " could sue " by reason of their interest or ownership therein ".

The other part of the question certified to us by the Appellate Division has to do with the striking from the complaint of paragraphs 13 and 15. That was a discretionary matter, and we see no abuse of discretion, so we cannot interfere.

The order should be affirmed, with costs, and the certified question answered in the affirmative.

CONWAY, J. (dissenting). This is a libel action. Plaintiff, who is president of the National Organization of Masters, Mates and Pilots of America, affiliated with the American Federation of Labor, alleges that he was libeled in articles in *The Pilot* the official weekly newspaper published by National Maritime Union, affiliated with the Congress of Industrial Organizations (C.I.O.), an unincorporated association. Plaintiff joined as defendants officers of the National Maritime Union (hereinafter called NMU) in their individual capacities and in their representative capacities as officers of NMU and as those constituting the editorial board of *The Pilot* who published it. He also joined as defendants the editor of *The Pilot* (who was not an officer of NMU) and the corporation which printed that newspaper.

The plaintiff seeks judgment not only against the defendants individually but also a judgment pursuant to section 13 of the General Associations Law which authorizes actions against an unincorporated association in the name of its president or treasurer. Two of the defendants herein are the president and treasurer of NMU.

After the service of a summons and complaint, the defendants moved for an order (1) pursuant to rule 106 of the Civil Practice

Act, dismissing the complaint as insufficient in law, and (2) for alternative relief, pursuant to rule 103, to strike out paragraphs " 10 ", " 13 " and " 15 " of the complaint. By moving under rule 106, the defendants admit every material allegation of the complaint, and also every fact which can fairly and legitimately be drawn therefrom. (See *Lamb* v. *Cheney & Son,* 227 N. Y. 418, 420.) They must be taken as true. (*Dun & Bradstreet, Inc.,* v. *City of New York,* 276 N. Y. 198, 201; *Locke* v. *Pembroke,* 280 N. Y. 430, 432; *Dyer* v. *Broadway Central Bank,* 252 N. Y. 430, 433.) Two bases were advanced for the first branch of the motion (a) that plaintiff's failure to allege expressly that the membership of NMU either *authorized, participated in or ratified* the defamatory statements constituted a fatal defect; and (b) that the action was in effect a labor dispute within the purview of section 876-a of the Civil Practice Act.

Special Term (SWEZEY, J.), denied the motion except to strike out paragraph " 10 ". On appeal the Appellate Division, Second Department, by a divided court, reversed and granted the motion to dismiss the complaint as against the officers in their representative capacities and granted the motion to strike out paragraphs " 13 " and " 15 " against the remaining defendants. Leave to serve an amended complaint was granted. The Appellate Division has granted leave to appeal to this court on a certified question reading as follows: " Was the order of this court granting the motion to dismiss the complaint as against the officers of the National Maritime Union in their representative capacities and granting the motion to strike out paragraphs 13 and 15 of the complaint as against the other defendants, properly made? "

There is no question raised on this appeal as to the defamatory nature of the articles published in *The Pilot.*

Section 13 of the General Associations Law reads as follows:

" § 13. *Action or proceeding against unincorporated association.* An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally.

Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."

At the outset we may say that we cannot escape the conclusion that the publisher of a periodical, be it an individual, a corporation or the associates of an unincorporated group or association of members, is responsible for libelous matter published therein.

The first eight paragraphs of the complaint refer to the plaintiff herein, his seafaring career from seaman to ship's captain, and his position as president of his union, the National Organization of Masters, Mates and Pilots of America (A. F. of L.) and the purposes and functions of that organization. Paragraph 1 outlines the career of plaintiff and, since it is succinct, we quote it in full: "1. That the plaintiff is a citizen of the United States, fifty years of age; that he was born in Cleveland, Ohio, and there received a public school education, and at the age of thirteen years, he secured employment on a sailing ship, and ever since has followed the call of the sea, working his way up in his chosen profession and occupation until he attained the rank of Master, and for about the past twenty-three (23) years he has held a Master's license; he has sailed all the seas of the globe, on all kinds of vessels, both as mate and as captain."

The complaint with reference to the defendants alleges in paragraph 9: " The defendant Joseph Curran is the President, defendant Ferdinand C. Smith is the Secretary, defendant M. Hedley Stone is the Treasurer, and defendants Frederick H. Myers, Howard McKenzie and Jack Lawrenson, respectively, are Vice-Presidents of ' National Maritime Union of America ', an unincorporated association of individuals * * *." It then alleges that the personnel of NMU consists almost entirely of unlicensed seafaring personnel in contrast to the membership of plaintiff's union, whose members direct and control such personnel as well as the ships. Paragraph 10 of the complaint, which was stricken out by Special Term, charged at some length that the defendant union was organized on a communist pattern with the aid of communist organizations and groups sympathetic to communist doctrine or secretly allied with communists.

Paragraph 11 reads as follows: "11. That among other means *of attaining its purposes,* the above stated National Maritime Union of America, *publishes a weekly newspaper owned by*

*it, called ' The Pilot '*, of which at all the times hereinafter mentioned, the defendant Lowell Chamberlain was and is, and the other defendants above named were and still do comprise its editorial board and direct and control its policies and contents; that said newspaper is of general circulation throughout the United States and in many places abroad, and ostensibly is published in the City and State of New York, sold at domestic subscription rates of $2.50 by mail, $3.00 in Canada, $4.00 foreign and the same is entered as second class matter at the Post Office at New York and is believed to have an approximate circulation of 125,000.'' (Emphasis supplied.) Under the United States Code (tit. 39, §§ 229–233), there is permitted the entry, as second-class matter at the post office, periodical publications, '' by or under the auspices of * * * trades-unions '' (§ 229) provided such a publication '' shall be originated and published to further the objects and purposes of such * * * trades-unions * * *.'' (§ 229.) That section (§ 229) further provides: '' The office of publication of any such periodical publication shall be fixed by the association or body by which it is published, or by its executive board, and such publication shall be printed at such place and entered at the nearest post office thereto.'' An affidavit prescribed by the Postmaster General must be taken by each publisher of any newspaper or periodical or publication sent through the mails with statements therein prescribed by section 231. Thus the granting of the privilege of entering *The Pilot,* the weekly publication of NMU, was obtained from the United States Government by NMU only because NMU published *The Pilot* to further the '' objects and purposes '' of NMU as alleged in the complaint.

Paragraph 12 alleges that the articles that were published in *The Pilot* about the plaintiff were written by and under the direction and control of the above-mentioned editorial board.

Paragraph 16 of the complaint alleges that on May 3, 1946, '' the defendants Joseph Curran, Ferdinand C. Smith, M. Hedley Stone, Frederick H. Myers, Howard McKenzie and Jack Lawrenson, as the National officers of the National Maritime Union of America, and as the editorial board of the aforesaid newspaper, and the defendant Lowell Chamberlain as the editor and the defendant Publications Printers Corp. as the printers and publishers, maliciously composed, printed and published in the

said newspaper 'The Pilot' a certain article, containing the false and defamatory matter " which we quote in part: " The whole drive of monopoly capital is directed against the rising democracies in Europe, the liberation movements in the colonial countries and for war with the Soviet Union. The people want peace and a decent living standard. That is why Big Business has so viciously attacked such unions as the electrical, steel, etc. Monopolists, recognizing the militancy of the marine unions and the strategic importance of marine in war, are united with the shipowners to fight and try to smash us, break the marine unions. They are enlisting as strike breakers the so-called leaders (meaning thereby among others the above named plaintiff) of the AFL marine unions, such as the SIU-SUP, ILA and MMP (meaning thereby the National Organization of Masters, Mates and Pilots of America). These ' leaders ' (meaning thereby among others the above named plaintiff together with such elements as Lewis, Woll, Dubinsky) will fight us (meaning thereby to convey that the plaintiff among others, was in league with the employers or ship owners and that he and others had disloyally joined with such Ship Owners in fraud of the National Organization of Masters, Mates and Pilots to frustrate the free will of such members in determining their policy in respect to the proposed strike)."

Paragraph 17 alleges that the article was maliciously and falsely published with an intent to injure plaintiff in his profession and in his position as an officer in the national and local union organizations of the National Organization of Masters, Mates and Pilots and to cause it to be believed that he was a strikebreaker and a traitor to his organization and dishonest and disloyal as a leader of marine workers. Paragraph 18 of the complaint alleges that the defamatory article had injured his good name and credit as a maritime labor leader and as an officer of his own labor unions.

The complaint then repeats and realleges paragraphs 1 to 15 of the complaint and alleges a second cause of action, based upon a publication in *The Pilot* on May 10, 1946, of another article purportedly signed by Joseph Curran, as president. The article charges the officials of the plaintiff's union and other union officials with not speaking for the rank and file when they said that the membership did not want the unity program. The

article then continued: " They know that the propaganda being spread by the officials of the Masters, Mates and Pilots, *Captain Martin* (meaning this plaintiff) and Captain Mays, is the same old line that the shipowners have been using for years to divide seamen and officers (intending thereby to imply that the plaintiff has for years been disloyal to organized marine labor and has been in league with the shipowners to disseminate false information to the seamen)." (Italics in original.)

As analyzed, the complaint, except for the defamatory character of the articles published, alleges that (a) the defendant union, the NMU, in attaining the purposes for which it was organized, publishes a weekly newspaper called *The Pilot,* (b) that the national officers of the union and the editor comprise the editorial board of the paper, (c) that the editorial board directs and controls the paper's policies and contents, (d) that the articles claimed to be libelous " were written by and under the direction and control " of the editorial board and were thus published by the top officials of NMU acting in the course of and within the scope of their employment, and (e) that the officers of the union published the statements " as the National officers of the National Maritime Union ", as well as in their capacity as " the editorial board " of *The Pilot,* the official publication of NMU.

The principal argument advanced against the sufficiency of the plaintiff's complaint is that it fails to allege expressly that the members of NMU ever authorized, participated in or ratified the alleged libelous statements. It was always fundamental in the jurisprudence of England and America that the common law was flexible, self-developing and all embracing so that all actual situations could be adjudicated. (See *Oppenheim* v. *Kridel,* 236 N. Y. 156, 164; III The History of Assumpsit in Select Essays in Anglo-American Legal History, pp. 259, 297, 298.) It is ancient common law, which has been stated in our New York cases for nearly one and one-half centuries, that the owner and publisher of a newspaper is responsible for all that appears in its columns although the publications may have been made without knowledge or authorization or ratification, or even contrary to the directions of, the owner or publisher. (*Andres* v. *Wells,* 7 Johns. 260, 262, 263 [1810]; *Huff* v. *Bennett,* 4 Sandf. 120, 130 [1850]; *Crane* v. *Bennett,* 177 N. Y. 106, 109; Townshend on

Slander and Libel [4th ed.], § 123; Odgers on Libel and Slander [5th ed.], pp. 168–171; Seelman on Law of Libel and Slander, par. 143, p. 127.) That such rule applies as a matter of libel common law to a group of men who associate themselves together in the creation, organization and publication of a periodical newspaper to attain the purposes and aims of their association has not been questioned in any case we have found or which has been called to our attention. We have freedom of speech and freedom of the press in our State and nation but only on the condition that while one may speek freely and publish in the press freely, one must respond in damages by way of restitution if one abuses the privilege by slandering or libeling another. As is well said in the Introductory Note (1937) to the American Law Institute's Restatement of the Law of Restitution (pp. 522–523): "Actions of tort are * * * based primarily upon wrongdoing and ordinarily, through the payment of money, compensate the injured person for the harm suffered by him as a result of the wrongful conduct, irrespective of the receipt of anything by the defendant." To derogate from the common law the Legislature must declare its purpose so to do directly and substantively and then such statement must be strictly construed. It is clear that the respondents here overlook the fact that this is a common-law action for libel governed by common-law libel law. Section 13 of the General Associations Law is an administrative and adjective statute. It was enacted to convenience a plaintiff, such as we have here, by enabling him to sue and more promptly reach the property of the association for the satisfaction of any judgment he may recover, without naming as defendants hundreds or even thousands of members of an association — in this instance no doubt employed on ships scattered about the world. He is not bound to sue the officer, for section 17 provides that he may bring action against all the members of the association. (*McCabe* v. *Goodfellow,* 133 N. Y. 89, 92.) At common law an unincorporated association could neither sue nor be sued in its own name. It had to sue in the names of all the associates as parties plaintiff or when sued, all the members had to be made parties defendant. (*McMahon* v. *Rauhr,* 47 N. Y. 67, 71.) The members could neither sue nor be sued through their officers. (*Van Aernam* v. *Bleistein,* 102 N. Y. 355, 358.) Then were

enacted statutes commencing with chapter 258 of the Laws of 1849 and chapter 455 of the Laws of 1851 which eventuated as matters of convenience and expediency in General Associations Law. That was the purpose of section 13. It was not intended to affect or derogate from the common law of tort, had no such effect and a court is not free to hold that there was such derogation accomplished by indirection and without expressed intention. Whatever it will be necessary for the plaintiff to do in a subsequent action against the individual members of the association brought pursuant to section 16 of the General Associations Law — if we are to unrealistically conjecture that an execution issued against property belonging to the association NMU here, including *The Pilot,* should be returned unsatisfied in whole or in part — need not detain us. This motion involves only the construction of a pleading and a determination whether *anyone* may be brought to the bar of justice for publishing libels affecting the plaintiff in a newspaper alleged in paragraph 11 of the complaint to be owned and published by NMU, an unincorporated association. It is clear that plaintiff is seeking to enforce a joint or several liability, if the proof establishes the latter, of the members of the association.

The first question for our determination, therefore, is: Who owns and publishes *The Pilot*? Is it the members of the unincorporated association NMU under New York State law or the trades-union NMU under United States law? We have the admitted allegation of the complaint that NMU is the owner and publisher of *The Pilot* and that it publishes it through the work of an editorial board composed of its national officers for the attainment of the purposes for which NMU was organized. We also have the admitted allegation that the NMU has represented and held itself out to be a trades-union under United States law so as to qualify, and so to obtain permission as a trades-union to publish the newspaper *The Pilot* with preferential mailing privileges under the Post Office Department of our Federal Government. (U. S. Code, tit. 39, § 229.)

So we shall divide our inquiry into two parts with two subdivisions of the first part.

1-a. Are the members of NMU as a New York State unincorporated association the owners and publishers of *The Pilot* and **responsible as such?** The Legislature has provided that an

unincorporated association may own personal or real property (General Associations Law, §§ 2, 6, 8, 15). Our court originally and until 1942 when we decided *Kirkman* v. *Westchester Newspapers, Inc.* (287 N. Y. 373) had held that an unincorporated association was not a legal entity separate from the persons who composed it (except as it was recognized under Federal statutes and decisions as a trades-union) and that it had no distinctive existence independent of its members. If that be so, then the members of NMU as a New York State unincorporated association are jointly the owners and publishers of *The Pilot* and are responsible for libelous articles jointly, even though unauthorized, and, therefore, no allegation of authorization, participation or ratification is necessary in the complaint and, since they are sued as permitted and provided in section 13 of the General Associations Law, the complaint states a good cause of action. The following is quoted by Mr. Seelman from *Andres* v. *Wells* (7 Johns. 260, 263, *supra*) in his Law of Libel and Slander and well phrases the rule: " But where a man is the owner of a paper and gives over the conducting of it to another, he thereby constitutes him his general agent; and is answerable for all his acts done in the execution of that trust, whether within or beyond the intention of the principal. ❊ ❊ ❊ It would be too much to say, that any man might with impunity own and sustain a public newspaper, without any responsibility for the libels with which it might abound."

1-b. If NMU be a juristic entity under our State statute in accord with our decision in *Kirkman* v. *Westchester Newspapers, Inc.* (*supra*) then the admitted allegation of paragraph 11 of the complaint that NMU is owner and publisher makes the legal entity NMU responsible for damages for the libels published of plaintiff and it is properly sued through its president and treasurer under our decision in the *Kirkman* case. While the entity here is composed of seafaring men rather than electricians and the entity is sued as defendant rather than suing as plaintiff, we cannot say that those differences are sufficient to distinguish the cases so as to say that it was wise and forward-looking and realistic for us to say in the *Kirkman* case that for the purpose of bringing a libel action *without an allegation of authorization by the members,* the unincorporated association was an entity but here it is not an entity. However, if our posi-

tion in the *Kirkman* case be not followed, or even abandoned, we merely go back to our position (*supra*) under 1-a.

If, viewing NMU *solely* as a New York State unincorporated association under the General Associations Law, we were to hold that neither the members of NMU nor NMU as a juristic entity is the owner and publisher of *The Pilot,* despite the conceded truth of paragraph 11 of the complaint that NMU is both owner and publisher, then *The Pilot* has no owner or publisher answerable to plaintiff who has been libeled and we must say that there is existent in our State a newspaper which is free under State law to libel men and hold them up to public obloquy with impunity and without responsibility. Such a denial of justice the common law of this State has never tolerated nor permitted and this is a common-law libel action.

2. Since NMU sought to be panoplied under United States law with the rights and privileges which attach to a trades-union and to thereby obtain preferential statutory rights as such a trades-union from the Post Office Department of our national government, it accepted the duties and responsibilities which flowed in the wake of the rights and privileges so obtained. Thus Federal statutes and decisions became applicable to NMU under this subdivision 2 of our decision. Under *United Mine Workers* v. *Coronado Coal Co.* (259 U. S. 344) it has been held that trades-unions are suable as distinct entities in tort and that the Federal statutes have changed the common-law rule of nonsuability of such associations. The Supreme Court of the United States speaking through Mr. Chief Justice TAFT said (pp. 385–388): " Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. *Pickett* v. *Walsh,* 192 Mass. 572; *Karges Furniture Co.* v. *Amalgamated Woodworkers Local Union,* 165 Ind. 421; *Baskins* v. *United Mine Workers of America,* 234 S. W. 464. But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary.   *   *   *
More than this, equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one

person of many, too numerous to sue or to be sued (Story Equity Pleadings, 8th ed., §§ 94, 97; *St. Germain* v. *Bakery, &c., Union,* 97 Wash. 282; *Branson* v. *Industrial Workers of the World,* 30 Nev. 270; *Barnes & Co.* v. *Chicago Typographical Union,* 232 Ill. 402); and this has had its influence upon the law side of litigation, so that, out of the very necessities of the existing conditions and the utter impossibility of doing justice otherwise, the suable character of such an organization as this has come to be recognized in some jurisdictions, and many suits for and against labor unions are reported in which no question has been raised as to the right to treat them in their closely united action and functions as artificial persons capable of suing and being sued.''

Here again we have the conceded allegation of paragraph 11 of the complaint that the trades-union NMU is the owner and publisher of *The Pilot* and responsibility by NMU for damages by way of restitution follows for libels published in the newspaper *The Pilot* against plaintiff. Again the complaint states a good cause of action. Let us now turn to the Federal as well as our State court decisions respecting the responsibility of trades-unions for tort.

As noted in appellant's brief, trades-unions, since 1902, when we decided *National Protective Assn.* v. *Cumming* (170 N. Y. 315) have played an increasingly important role in modern life. Recognized as juristic entities under both Federal and State statutes for many purposes (see *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 385–389, *supra; Kirkman* v. *Westchester Newspapers, Inc.,* 287 N. Y. 373, *supra; United States* v. *White,* 322 U. S. 694, 703–704) they have frequently thousands of members and have been subjected to and paid fines and damages out of their treasuries. (*International Union, United Mine Workers* v. *United States,* 177 F. 2d 29, certiorari denied 338 U. S. 871; *United States* v. *United Mine Workers,* 330 U. S. 258.)

Trades-unions are no longer mere unincorporated associations, as that term was formerly understood. As a practical matter, it has been held that labor unions have as perpetual an existence as corporations. (*United States* v. *White, supra,* p. 701.) They are not sporadic or transitory associations pro-

jecting "spasmodic moral movements" as in the case of *McCabe* v. *Goodfellow* (133 N. Y. 89, 95 [1892], *supra*).

Recent decisions emphasize that the realities of present day trades-union organization require a recognition of its unified character. (See *Kirkman* v. *Westchester Newspapers, Inc., supra*.) We there held that a union was a legal entity to the extent necessary to permit suits for libel to be brought on behalf of the union by its officers. The defamatory articles therein charged the union's officers with wrongdoing in the performance of the work of the association. In holding that libel suits could be brought on behalf of all the members of the union by its officers, without an allegation of authorization by the members, we pointed out that defamatory articles charging wrongdoing by the union's officers tended to discredit the work in which all the membership have a common interest, and that the membership as a whole has the right to protect the good name and reputation of the union from libelous attacks. On the basis of our holding there that an unincorporated trades-union is an entity which may sue under section 12 of the General Associations Law for a libel published against its officers, it follows by a parity of reasoning and as a necessary corollary that under section 13, it may be sued for a libel published by it as an entity in its official publication against a union officer charging him with wrongdoing. Just as the membership as a whole in an unincorporated association has the right as plaintiff to protect the good name and reputation of its union and to act as an entity, so as an entity it must respond in damages for libel as defendant when it has published a newspaper which libels the good name and reputation of a union officer of another union whose members have the same right of protection for the good name and reputation of their union.

The United States Court of Appeals, District of Columbia, held in *Busby* v. *Electric Utilities Employees Union* (147 F. 2d 865 [1945]) that even without enabling legislation, a trades-union could sue and be sued in its common name and its treasury funds subjected to execution. After remand (in 323 U. S. 72), in which the United States Supreme Court held that the question of whether an unincorporated trades-union is without capacity to sue or be sued in its own name, is one which must

first be decided under local law, the Court of Appeals quoted at length from the testimony of the general counsel of the American Federation of Labor before the Judiciary Committee of the House of Representatives in relation to rule 17 (b) of the Rules of Civil Procedure (U. S. Code, tit. 28), authorizing suits by and against unincorporated associations in the common name. A portion of his testimony, so quoted, is as follows (pp. 866–867) :

" ' For many years there was holy horror on the part of labor organizations to the inclusion of a provision of this kind. They did not wish to be in the position of being sued, or to sue in their common name. They objected to that. That arose out of experience, just as a child burns its fingers and learns its lesson. * * *

" ' * * * In the last dozen years a change has taken place in this attitude on the part of labor. We do not object, in a sense, and under proper circumstances, to being sued in our common name, or to suing in our common name. Not that we like it, but we do not object. Because the entire history of the law has changed — and the relation of labor unions to litigation has changed, and to getting into court and getting out of court. Where at one time we were defendants, and only [in] injunction cases and took our lickings quite frequently, today, in many cases we are both plaintiffs and defendants. Your entire enforcement of the Wagner Act is based upon the vehicle of injunction, and must be used by labor unions; the enforcement of the National Labor Relations Board Act is based upon injunctive decrees, and in those cases where we disagree with employers we have to go before the appellate court and ask for injunctive decrees. You will notice that in the proposed wage-and-hour bill enforcement is by injunctive decree.

" ' Since 1932, or, since the passage of the Norris-LaGuardia Act [29 U. S. C. A. § 101 et seq.] our attitude toward this suability has changed entirely. Today we have not the fear that we did have in the past. * * * So we are not opposed to being sued in proper cases, because we too have to sue in proper cases to obtain our rights.

" ' Incidentally, it was stated by someone here yesterday that most States do have laws that permit labor organizations to be sued in their proper names or common names, and also to bring

suits in law. That is so. We have had, as a result of disputes between the C. I. O. and the A. F. of L., to go into court and seek relief in respect to the funds in one organization or another. We can only do so properly in our own common name. So today labor is not objecting to being sued in its common name.' ''

Later in its opinion the court said (p. 868): '' It would be unthinkable that in such circumstances the union itself should not be answerable for its contracts or its torts made or inflicted by one of them in the common business.''

So the general counsel whose language was thus quoted in the *Busby* case (*supra*) was a common-law lawyer who was merely restating the principle that the common law is a living organism which moves in response to the fuller development of man and of the State and nation so as to include, in its flexibility, all changes in their surroundings, growth and interdependence. As Lord COLERIDGE said of those who declare the common law in *Lumley* v. *Gye* (2 El. & Bl. 216, 267), '' Judges are not necessarily to be ignorant in Court of what everybody else, and they themselves out of Court, are familiar with  *  *  *.''

Since this is an action in tort, the cases that deal with the *contractual* responsibility [1] of membership associations are not apposite. Knowledge of the limited liability of the association's members and the limited authority of the association's agent in entering into the specific *contract* is chargeable to the third party. Nor in our opinion are the numerous cases having to do with wrongful expulsion [2] and damages therefor to a wronged member. Those have to do with the internal affairs of the association. Those cases which have held trades-unions not liable for the violence of individual members are analogous to cases where an employee of a corporation has gone outside of his

---

[1] *Contract cases.* (*McCabe* v. *Goodfellow*, 133 N. Y. 89; *National Bank* v. *Van Derwerker*, 74 N. Y. 234; *Lightbourn* v. *Walsh*, 97 App. Div. 187.)

[2] *Wrongful expulsion.* (*Schouten* v. *Alpine*, 215 N. Y. 225; *People ex rel. Solomon* v. *Brotherhood of Painters*, 218 N. Y. 115; *Browne* v. *Hibbets*, 290 N. Y. 459; *Glauber* v. *Patof*, 294 N. Y. 583; *O'Brien* v. *Papas*, 49 N. Y. S. 2d 521; *Blek* v. *Wilson*, 262 N. Y. 253; *Polin* v. *Kaplan*, 257 N. Y. 277; *Shapiro* v. *Gehlman*, 244 App. Div. 238.)

employment and without regard to his service and, acting maliciously, has committed an assault.[3]

The following cases, in principle, all support the view that an unincorporated union, as an entity, may be held responsible for libel. (*National Variety Artists, Inc.,* v. *Mosconi,* 169 Misc. 982; *Pandolfo* v. *Bank of Benson,* 273 F. 48, 50; *Tonelli* v. *Osman,* 54 N. Y. S. 2d 793; *Peterson* v. *Cleaver,* 105 Neb. 438.) In the *Pandolfo* case, the Circuit Court of Appeals, Ninth Circuit, in holding an unincorporated association of bankers liable for a defamatory letter published in one of its books said: '' The members of an unincorporated association are liable in their collective capacity for tort (5 C. J. 1369; 25 R. C. L. 67), and they are answerable for damages for libel published by their agent with their authority while the agent is acting within the scope of his employment, just as a corporation is liable under like circumstances [citations].''

Thus it matters not whether we hold that the members of NMU are the owners and publishers of *The Pilot* and jointly or severally liable for libelous articles published therein or whether we hold the entity the unincorporated association trades-union NMU to be publisher and owner of *The Pilot* with consequent responsibility for libel. In either or both views, the complaint states a cause of action.

Besides the question as to the sufficiency of the complaint against the defendant union, there has also been certified a question concerning the correctness of the order appealed from in striking out paragraphs 13 and 15 of the complaint under rule 103 of the Rules of Civil Practice as against the remaining defendants. The allegations of those paragraphs were sustained by Special Term as tending to show malice and thus constituting a basis for punitive damages. The Appellate Division reversed, without comment, and granted defendants' motion to the extent of striking those paragraphs from the complaint as to the remaining defendants. While such a motion is not favored and allegations of a complaint will not be stricken out unless it is

---

[3] *Assault torts.* (*Osipoff* v. *City of New York,* 286 N. Y. 422, 431–432; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 395; *Coronado Coal Co.* v. *United Mine Workers,* 268 U. S. 295, 304; *Michaels* v. *Hillman,* 112 Misc. 395, 412–413; cf. *Mazurajtis* v. *Maknawyce,* 93 Misc. 337; *Tannenbaum* v. *Hofbauer,* 142 Misc. 120.)

clear that they have no possible bearing on the subject matter of the litigation (*Solomon* v. *LaGuardia,* 267 App. Div. 435) it is also *firmly established that the granting or denial* of such a motion under rule 103 rests in the sound discretion of the Supreme Court. (*Bata* v. *Bata,* 302 N. Y. 213; *Solomon* v. *La Guardia, supra*; Civ. Prac. Act, § 603.) There is then no question of law presented as to this portion of the certified question unless we can say on the pleadings herein that it was an abuse of discretion as matter of law to strike out the two paragraphs in question (*Bata* v. *Bata, supra*; Civ. Prac. Act, § 603). Briefly, paragraph 13 of the complaint alleges that the defendants, in concert with one Harry Bridges and others connected with unions dominated by communistic doctrines, embarked upon a " Unity " program with the intention of destroying unions which were free from communist influence and to subject American commerce on the high seas to the influence of foreign powers in which communist theories prevail. In paragraph 15, the complaint alleges that the defendant union published statements calculated to arouse the jealousy of nonskilled workers against their officers and to appeal to their passions by indicating, through pictures, etc., fabulous wages for seamen if they would unite under the communist-controlled " Unity " program. We think the Appellate Division, within the wide limits of its permissible discretion, had the power to strike out those paragraphs and that we cannot say as a matter of law that the action was improper. Plaintiff will not be deprived of his right to punitive damages, as the *pertinent* allegations in paragraphs 10, 13 and 15 which tend to show malice and therefore a basis for punitive damages, may be set forth in an amended complaint. (See *Colwell* v. *Tinker,* 169 N. Y. 531, 537; *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231.) Since we cannot say *as a matter of law* that the Appellate Division abused its discretion, it follows that the appeal from that portion of the order which granted defendants' motion to strike out paragraphs 13 and 15 of the complaint, must be dismissed since no decisive question of law is presented for our review. (*Bata* v. *Bata,* 302 N. Y. 213, *supra*; *Braunworth* v. *Braunworth,* 285 N. Y. 151, 154.) The other portion of the certified question — asking whether the dismissal of the complaint against the union officers in their representative capacities was proper — should be answered in the negative.

The NMU also takes the position that the libels which are the basis for these causes of action arose out of and concerning a labor dispute within the purview of subdivision 6 and paragraphs (a) and (c) of subdivision 10 of section 876-a of the Civil Practice Act and that subdivision 6 of that section protects the union from a suit in libel unless the complaint alleges actual authorization or ratification of the membership of the union. Subdivision 6 provides: " 6. No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute (as these terms are herein defined) shall be held responsible or liable in any civil action at law or suit in equity, or in any criminal prosecution, for the unlawful acts of individual officers, members, or agents, except upon proof by the weight of evidence and without the aid of any presumptions of law or fact, of (a) the doing of such acts by persons who are officers, members or agents of any such association or organization, and (b) actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof by such association or organization."

We have already held that the fact that parties to an action are labor officials or unions does not for that reason alone make the issue involved a " labor dispute ". We settled that question in an action against an unincorporated association in *American Guild of Musical Artists* v. *Petrillo* (286 N. Y. 226, 231, *supra*), LOUGHRAN, J., by pointing out that unless " the objective of the defendant-union is a lawful one, this controversy is not a ' labor dispute ' in the sense of section 876-a of the Civil Practice Act * * * ", and that therefore section 876-a was without application. We pointed out there that harm intentionally done by a labor union is actionable if not justified. Torts such as assaults, conversion, slander or libel do not constitute labor disputes in the sense of section 876-a of the Civil Practice Act. (See *Busby* v. *Electric Utilities Employees Union,* 147 F. 2d 865, 868, *supra,* pp. 294–296.)

In the *Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union* case (288 N. Y. 188) we held that the situation therein did not come within the purview of section 876-a although on the surface there was a labor dispute between rival union organizations. Justice COLLINS when at Special Term, in *Tonelli* v.

*Osman* (54 N. Y. S. 2d 793, 794, *supra*) used language which seems to us applicable to this situation.

The order of the Appellate Division should be modified by reversing so much thereof as dismissed the complaint against the defendants in their representative capacities, and to that extent the order of Special Term should be affirmed, with costs to plaintiff in this court and in the Appellate Division.

The appeal from so much of the order of the Appellate Division as granted the motion to strike out paragraphs 13 and 15 of the complaint should be dismissed.

The first portion of the certified question should be answered in the negative. The second portion of the certified question is not answered.

LOUGHRAN, Ch. J., DYE and FULD, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which LEWIS and FROESSEL, JJ., concur.

Order affirmed, etc.