Isidok Wasservogel, Spec. Ref.
Pursuant to an opinion and order of the Appellate Division, First Department (6 A D 2d 1032), reversing a prior determination of a Justice of this court, this matter was remitted to Special Term directing a hearing on the issues presented by plaintiffs’ application to punish defendants for contempt of court for violating and disobeying an injunctive order of Mr. Justice OweN McGiverN. entered and filed on March 4, 1957 (4 Misc 2d 637).
Plaintiff corporation (hereinafter referred to as the “ Association ”) is a trade association of funeral establishments in the City of New York and surrounding counties and is the authorized bargaining representative of its members, who, in the aggregate, conduct more than 85% of the funerals in this city. Its members employ virtually all embalmers and apprentice embalmers for whom the defendant union, Local 407 (hereinafter referred to as the “ Union ”), is authorized to bargain collectively.
*305 Two categories of embalmers are used in the trade here involved, to wit, the so-called “trade embalmers” and the ‘ ‘ employed ” or “ salaried ’ ’ embalmers. The Union is the bargaining representative for the salaried embalmers and the apprentices. Trade embalmers, as a class, have not been included in any of the Association’s collective bargaining agreements with the Union to date.
Plaintiffs contend that the restraining order of Mr. Justice McGriVEE.3sr {supra) was based upon his finding that trade embalmers are independent contractors and independent businessmen, not employees, and that, therefore, the Union could not lawfully engage in collective bargaining or other union activities with respect to them. The restraining order followed his determination that a labor dispute did not exist between the Union and the Association and its members. Accordingly, the order placed the following restrictions on defendants:
“(a) Agreeing, conspiring and combining to injure and destroy the goodwill, trade, business and property of plaintiffs and from doing any and all acts whatsoever in furtherance thereof,
“(b) Picketing, patrolling, congregating or maintaining picket lines in front of, near or in the vicinity of plaintiff’s place of business,
“(c) Attempting to induce, persuade, coerce or intimidate any employee, customer or supplier of plaintiffs or any other person, firm or corporation with intent of affecting or causing them or any of them to fail or to refuse to work for plaintiffs or to make deliveries to and from plaintiffs’ premises or in any other manner not to deal with or to transact business with the plaintiffs,
“(d) Announcing by placards, signs, circulars, or any writing, or orally that the plaintiffs are unfair to the defendants or union labor or that the employees of the plaintiffs are on strike or adopting any procedure which conveys the impression to the public that the employees of the plaintiffs are on strike or that a labor dispute exists, and,
“(e) Agreeing, conspiring and combining to force or compel plaintiffs or any others similarly situated to recognize defendant union or any other affiliated body as the collective bargaining representative for trade embalmers,
‘ ‘ (f) Urging, coercing or persuading any funeral director not to deal with plaintiff Addeo or to bring about any breaking of contract or non-fulfillment of contract between plaintiff Addeo and any funeral director.”
*306 Plaintiffs claim that the Union’s picketing, distributing bulletins to its membership concerning the alleged issues of the purported labor dispute between the parties, pressure on plaintiffs to recognize the Union as the representative bargaining agent for the trade embalmers and alleged coercive tactics by the Union against members of the Association subsequent to the restraining order constitute a violation of paragraphs (a) to (e), inclusive, of said order (supra).
The Union asserts, however, that Mr. Justice McGtverN’s order only restrained them with respect to union activities concerning the individual plaintiffs Geis Funeral Home and Addeo, and that inasmuch as none of the defendants resumed picketing or resorted to other economic and coercive activities against these particular plaintiffs, the Union’s subsequent conduct, as complained of by plaintiffs, did not violate this order. Defendants further contend that, in any event, a new labor dispute between the parties arose subsequent to the issuance of the injunctive order, which dispute was not controlled or affected by the restrictions above set forth, thereby entitling the Union and its members to resume picketing and pursue other union activities relative to a collective bargaining labor dispute.
Defendants’ contention that the order of Mr. Justice McGivern is limited to any one or two of plaintiffs, to the exclusion of all other members of the Association, is specious. It is significant that the subsequent order of the Appellate Division (6 A D 2d 1032) reversing the denial of a motion for a temporary injunction herein specifically restrained picketing, patrolling and congregating by the Union or its members ‘ ‘ in front of or near the vicinity of any of the places of business of the appellants or any member of the appellant association.” Likewise, an examination of Judge McGivern’s opinion on the motion for a temporary injunction (4 Mise 2d 637) and his subsequent restraining order made pursuant thereto (supra) clearly refute defendants’ attempt to limit its effectiveness to any. individual plaintiff. This order, in effect, separately provides for the three different sets of parties plaintiff in this matter, to wit, (1) the Association, (2) its members, and (3) the individual plaintiffs Geis Funeral Home and Addeo. If, as defendants contend, the issues before Judge McGivern were limited only to the individual plaintiffs Geis Funeral Home and Addeo, there would have been no necessity to join any of the other plaintiffs, namely, the Association and its members, as parties to this lawsuit, nor would it have been necessary to allege separate causes of action in their behalf. Thus, in view of the fact that plaintiffs have conceded that no picketing of the Geis Funeral Home or of the *307 Addeo premises took place after the injunctive order had been issued, paragraph (f) of said order is hereby deemed eliminated from the consideration of this motion to pnnish defendants for contempt and the alleged violations of paragraphs (a) to (e) inclusive of Judge McGtiyeeN’s order, only, will he considered by the court. These paragraphs clearly pertain to the Association and all of its members.
Before considering the alleged violation of these paragraphs, however, it is necessary to dispose of defendants’ contention that Judge McGriVERN did not hold that all trade embalmers are independent contractors, not employees, and, therefore, not subject to the Union’s usual collective bargaining activities. While an examination of his opinion indicates that Judge McGiveek dd not so state specifically, any other interpretation of his opinion and order based thereon would render paragraph (e) of his restraining order meaningless, particularly in view of the language set forth therein making this provision applicable to “ any others similarly situated.” In any event, inasmuch as one of the principal issues here involved is whether there was a violation by defendants of paragraph (e), it is now necessary for this court to examine into the status of a trade embalmer as opposed to that of a salaried embalmer in order to determine whether or not union activities with respect to the former fall within the interdiction set forth therein.
It appears from the record that an “ employed ” or ‘ ‘ salaried ’ ’ embalmer works a regular weekly schedule of 40 hours per week under the direct control and supervision of his employer. The relationship is in every sense one of employee-employer. The “salaried” embalmer is covered by Social Security and is protected by applicable disability benefit laws and unemployment insurance. In all cases, the ‘ ‘ salaried ’ ’ embalmer is provided by his employer with necessary transportation, embalming fluids and materials, and any other supplies required by him in his job.
“ Trade ” embalmers, on the other hand, provide their own supplies and transportation. They have no set hours and charge on a “ per case ” basis. They bill periodically on their own billheads for services rendered and they may and frequently do service many different funeral establishments. None of the social laws enacted for the benefit of employees is applicable to them. Thus, in the opinion of the court, “trade” embalmers must be deemed for the purposes of this proceeding to be independent contractors and independent businessmen, as opposed to the employee-employer relationship of the “salaried” embalmers.
*308 The most serious defense to this motion to punish defendants for contempt is their contention that subsequent to Judge McGtverN’s order a new labor dispute arose between the parties, thereby affording their renewed picketing activities the 4 4 protection ” of section 876-a of the Civil Practice Act and thus removing them from the prior injunctive restrictions. Nothing in the record, however, warrants the conclusion that section 876-a of the Civil Practice Act is now applicable to this situation or that defendants ’ alleged 4 4 new ’ ’ labor dispute was in reality anything more than a continuation of their prior efforts to compel the Association and its members to recognize 44 trade ” embalmers as a part of the collective bargaining unit. As a matter of fact, in the briefs submitted to the court after the hearings on this motion, defendants, in effect, conceded that they made collective bargaining demands upon plaintiffs with respect to trade embalmers subsequent to the restraining order. Moreover, the record itself shows that almost every time subsequent to the order of Judge McG-iverN that the Union or its representatives negotiated with the Association or any of its members on a collective bargaining basis, the Union insisted on its being recognized as the collective bargaining agent for 44 trade ” embalmers before it would discuss or arrange a settlement of any issues concerning the 44 salaried ” embalmers. This conduct on the part of the Union is an obvious violation of paragraph (e) of the injunctive order here involved.
The credible testimony and documentary evidence further establish that after picketing commenced in front of establishments owned or operated by members of the Association, the Union made it clear that such picketing would continue and would be removed only if plaintiffs would accede on the issue of 4 4 trade ’ ’ embalmers and recognize the Union as their representative. The record shows that on at least two occasions members of the Association were coerced by the Union to recognize 44 trade ” embalmers as a part of a collective bargaining agreement between them or face continued picketing of their premises. Upon such recognition, the Union ceased its picketing. This clearly refutes defendants’ contention that they were 44 lawfully ” picketing in a 44 new ” labor dispute involving only 44 salaried ” embalmers.
Moreover, the references in the Union’s so-called 44 Spotless Bulletin,” a publication issued by the Union to its members in August, 1958, and its purported collective bargaining agreement seeking to cover 44 trade ” embalmers, which was submitted by the Union to plaintiffs during the Summer of 1958, are further proof that the true objective of the Union’s activities was to *309 press the issue of the recognition of “trade” embalmers as part of the collective bargaining unit. In the opinion of the court, all of the Union activities here involved, including the use of pickets, picket signs, the circulation of letters to other unions and to the public in an attempt to discourage patronage of the Association’s members are all in direct violation of the injunctive order, inasmuch as this course of conduct destroyed or was a calculated attempt to destroy the goodwill, trade and business of the Association and of its members.
It is significant that there are no limitations in the injunctive order here involved. Its language is simple and direct and there is no cause for any real misunderstanding of its provisions on the part of defendants. It restrained, in effect, all coercive acts, all placards, signs and circulars, and all other efforts calculated or tending to harm the goodwill and trade of the Association and its members. The Union’s conduct, therefore, which, in reality, was merely a continuing effort on its part . to compel the Association and its members to recognize it as the collective bargaining representative for “ trade ” embalmers, and its coercive tactics in this behalf by picketing, patrolling and circulating literature to its members and the public concerning the alleged “ issues ” between the parties, thereby injuring the goodwill, trade and business of plaintiffs, must be deemed to be a deliberate, willful and total disregard of paragraphs (a) to (e) inclusive of the mandate of the court.
As above stated, the order here involved was complete and comprehensive. If defendants or any of them felt that it was improvident, erroneous or that, in its effect, it improperly or unduly restricted and curtailed future concerted Union activities with respect to salaried embalmers, the remedy was by application to the court to vacate, modify, or clarify it, or by way of appeal. So long as the order was in force and effect, it was the duty of each and every one of the defendants to obey it fully and carefully (Koehler v. Farmers Drovers’ Nat. Bank, 6 N. Y. S. 470, affd. 117 N. Y. 661; Enterprise Window Cleaning Co. v. Slowuta, 273 App. Div. 662, affd. 299 N. Y. 286). Defendants’ failure to do so, as evidenced by their conduct as herein set forth, now requires this court to hold them liable for contempt and to punish them therefor.
Contrary to defendants’ contention, the assertion that an order is erroneous is no defense to this motion, even if they may be correct in such assertion. When an order is issued by a judge having jurisdiction of the matter before him, the persons upon whom it is served have two alternatives, and only two. If they desire to avoid contempt of court, they must (1) either obey the *310 order or (2) seek to set it aside by the duly authorized methods set forth in the laws of this State. Until such time as it may be set aside, they have no right to disobey it, even if erroneous (New York Shipping Assn. v. International Longshoremen’s Assn., 154 N. Y. S. 2d 360, 375). Although the courts have always assisted labor in attaining their ideals and rights, care and vigilance must nevertheless be maintained so that labor and all other segments of the public are not led into disregard or disrespect for the law. The Union and its members must be made to understand that they are subject to the orders of the court and if any such order proves to be onerous or erroneous, relief is by way of law, not by disobedience. It is the function of contempt proceedings such as the instant one to make certain that future obedience to the mandates of the courts will be a certainty rather than conjectural. This is necessary for the orderly and peaceful progress in the field of labor as well as in all other strata of society (see New York City Tr. Auth. v. Loos, 39 L R R M 2203; New York Shipping Assn. v. International Longshoremen’s Assn., supra, p. 380).
For its willful and deliberate violations of paragraphs (a) to (e), inclusive, of the injunctive order, the Union is fined the sum of $500.
Inasmuch as the wrongs committed by the Union were perpetrated with the full knowledge and aequiesence of its membership, the Union is liable in money damages therefor (Martin v. Curran, 303 N. Y. 276; see, also, New York Shipping Assn. v. International Longshoremen’s Association, supra). As a result of the course of conduct pursued by the Union in disregard of the restraints placed upon them by Judge McG-ivekn, the record establishes that the Association and its members incurred certain expenses and sustained damages for which they may recover as part of the contempt proceedings before this court. The record shows that the Association and its members incurred legal expenses of $10,400 for counsel fees as of the date of trial, exclusive of any additional fee which may be now due and owing their attorneys for conducting this hearing and the preparation of briefs and papers relating thereto. I find, therefore, that they are entitled to recover from the Union for such legal fees and expenses the sum of $12,500, plus the sum of $383.75, the cost of the minutes taken on the hearings. No other costs or disbursements are allowed.
Settle order in accordance with the foregoing within 10 days on 3 days’ notice.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.